

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED102088 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | |
| | ) | |
| DRANEL CLARK, | ) | Honorable Thomas Frawley |
| | ) | |
| Defendant/Appellant. | ) | Filed: February 23, 2016 |

## Introduction

Dranel Clark (Appellant) appeals from the trial court's judgment entered after a jury trial convicting him of assault in the second degree, armed criminal action, and resisting arrest. We affirm.

## Factual and Procedural Background

The State charged Appellant, as a prior offender, with assault in the first degree (Count I), armed criminal action (Count II), attempted robbery (Count III), armed criminal action (Count IV), unlawful use of a weapon (Count V), and resisting arrest (Count VI). The evidence adduced at trial, viewed in the light most favorable to the verdict, is as follows.

In October 2011, Edward White (White) worked at a bar doing odd jobs. At approximately 10 p.m. on October 1, 2011, White left the bar and walked to a check cashing place about two blocks away to get change for the bar. On his way there, White

saw a group of young men on the street that made him nervous. After getting about $200 in change, White left the check cashing place and crossed the street to avoid the group of men he had seen earlier.

As he crossed the street, Appellant started walking, and then running, toward him. White was walking through a White Castle parking lot when Appellant caught him and tried to push him into a car. White resisted.

Appellant put a gun to White's head and told him to "up it" which White believed meant to give Appellant the money. Appellant put the gun to White's temple and pulled the trigger but White "ducked real quick" and the bullet missed him. White struggled with Appellant and Appellant shot again, this time grazing the back of White's head. Appellant fired a third shot, but the gun jammed. Appellant then began hitting White in the back of the head with the gun.

Officer Aaron Quarles (Quarles) was driving in his patrol car when he heard a gunshot at the White Castle approximately 100 feet away. Quarles saw two people fighting and a muzzle flash, then heard another gunshot. Quarles pulled into the lot and saw Appellant beating White. When Quarles told Appellant to stop, Appellant looked at him and ran away. Quarles pursued Appellant in his vehicle, with the lights and siren activated. Quarles saw the magazine fall out of the gun Appellant was carrying and then saw Appellant throw the gun. Once Appellant threw the gun, Quarles exited his vehicle and pursued Appellant on foot. Quarles ordered Appellant to stop but Appellant continued to run until Quarles drew his firearm. Appellant then stopped and put his hands up. When Quarles holstered his weapon, Appellant turned toward Quarles and assumed a "fighting stance." Quarles took out his baton and, while attempting to strike

2

Appellant's arm, hit Appellant in the head as Appellant bent over. Appellant then complied with Quarles' orders and was placed under arrest.

After the altercation, White returned to the bar where someone called the police. White received stitches for lacerations on the side of his head and over his right eye.

The jury found Appellant guilty of the lesser-included offense of second-degree assault (Count I), armed criminal action (Count II), unlawful use of a weapon (Count V), and resisting arrest (Count VI). The trial court sentenced Appellant to seven years for second-degree assault, three years for armed criminal action, and four years each for unlawful use of a weapon and resisting arrest. The court ordered the sentences to run concurrently except the three-year sentence for armed criminal action, which was ordered to run consecutively to the assault charge, for a total sentence of ten years. Following sentencing, the trial court vacated the conviction for unlawful use of a weapon by agreement of the parties. This appeal follows.

<u>Points on Appeal</u>

In his first point, Appellant argues the trial court abused its discretion in failing to grant a mistrial because the jury panel saw Appellant in restraints, without good cause, which made Appellant appear to be dangerous and destroyed the presumption of innocence to which he was entitled.

In his second point, Appellant contends the trial court abused its discretion in limiting Appellant's defense by allowing the State to redact pages of White's medical records admitted into evidence which contained the results of blood tests performed on White because the positive alcohol and cocaine blood test results were relevant and

admissible evidence and corroborated Appellant's defense that White was intoxicated and attacked Appellant.

In his third point, Appellant asserts the trial court abused its discretion in submitting Jury Instruction 6 for assault in the second degree, in that Appellant was not assured a unanimous verdict because the submitted instruction did not specify the "assault" charged and did not ensure the jury would unanimously convict Appellant of the same conduct, in that it was a disputed fact at trial whether Appellant shot at or struck White.

Discussion

Point I − Restraints

Before jury selection began, the court sent the venire panel to lunch. After addressing several pretrial matters, the court told the deputies that if any jurors were in the courtroom following the lunch break, the deputies should allow Appellant to walk into the courtroom ahead of them so it would not appear that they were escorting him into the room. After the lunch recess, defense counsel advised the court the deputies may have escorted Appellant into the courtroom in front of the jurors:

> [Defense Counsel]: Judge, it's been brought to my attention they may have walked my client in in front of everybody. I wasn't here so I don't know.
> The Court: I told them specifically how to do it before I left.
> [Defense Counsel]: I wasn't here.
> The Court: I wasn't specifically in the room, but I told them how to do it and I trust my deputies to do what I tell them to do.
> [Defense Counsel]: Okay. I guess I don't know how it was done, I'm just going by what he's telling me, they walked in side by side with him. If that is the case I would request a mistrial at this point.
> [Prosecutor]: I wasn't here. I do know the court was very specific in the court's instruction. I do know those deputies well, I would be shocked if it is anything other than what the court instructed them to do.
> The Court: Your request is denied.

4

On appeal, Appellant contends the trial court erred in failing to grant his request for a mistrial because he was denied his rights to due process of law and a fair trial before an impartial jury, in that the venire panel knew Appellant was incarcerated and Appellant appeared in restraints without good cause, destroying the presumption of innocence to which he was entitled.

Granting a mistrial is a drastic remedy employed only in the most extraordinary circumstances. State v. Whitt, 461 S.W.3d 32, 37 (Mo. App. E.D. 2015). The trial court is in the best position to determine whether a mistrial is appropriate. Id. We review the denial of a motion for mistrial for abuse of discretion. Id.

Here, nothing in the record supports Appellant's position on appeal that he appeared before the venire panel in restraints. The trial court record indicates only the *possibility* that the deputies walked into the courtroom "side by side" with Appellant. Appellant's suggestion on appeal that he was shackled, or even possibly shackled, before the venire panel is completely unsupported by the record. Furthermore, uniformed officers escorting a defendant into the courtroom does not imply restraint and the use of identifiable security guards in the courtroom is not inherently prejudicial. State v. Vaughn, 271 S.W.3d 632, 633 (Mo. App. W.D. 2008). Appellant's Point I is denied.

Point II – Redaction of Medical Records

At trial, White testified he drank two to three beers on the night of the assault. White denied having five or six beers or being intoxicated. White's boss also testified White did not appear to be intoxicated. During cross-examination, defense counsel proceeded to question White about his drug use:

[Defense Counsel]: …Now we talked about alcohol.  Were you under the influence of any drugs that night?
A. No, man, I don't use no drugs.
Q. So you weren't using any drugs around that time period?
A. No.

During a sidebar, the State argued the defense's questioning regarding drug use was an attempt to introduce irrelevant testimony regarding prior bad acts.  A discussion ensued about hospital records showing White had "tested positive" for cocaine on the night of the assault.  Defense counsel argued White's denial of drug use "around that time period" was a lie.  The prosecutor argued it was unclear from the medical records when the cocaine was ingested.  Defense counsel stated he was "fine" with White's answer.

Before the defense's case-in-chief, defense counsel advised the court he was going to introduce White's hospital records into evidence under a business-records affidavit.  The prosecutor indicated she had no objection to their admission but would object to those portions "including prior bad conduct like we discussed, the cocaine amount."  At the conclusion of Appellant's case, defense counsel moved to admit the records.  The prosecutor did not object to admission of the records as long as certain portions were redacted in the event the records were sent to the jury during deliberations.

During deliberations, the jury sent a note to the court requesting White's hospital records.  The prosecutor objected to the inclusion of White's alcohol and drug testing results.  Defense counsel argued the records should be provided to the jury without redaction because they dispute White's testimony that he was not using drugs "around that time period."   The court redacted the records as requested by the State before submitting them to the jury for consideration.

6

On appeal, Appellant argues the trial court abused its discretion redacting the blood alcohol and drug testing results from White's medical records because the positive alcohol and cocaine blood test results were relevant and admissible evidence as they served to impeach White's testimony, corroborated Appellant's testimony that White was intoxicated and attacked Appellant, and went to the issue of whether White accurately recalled the incident.

The trial court has broad discretion when ruling on the admission or exclusion of evidence at trial, and this Court will not disturb the court's ruling absent a showing of an abuse of that discretion. State v. Kemp, 212 S.W.3d 135, 145 (Mo. banc 2007). "[T]hat discretion is abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." Id. We will reverse on claims of error in the admission or exclusion of evidence only if the error was so prejudicial that it deprived the defendant of a fair trial. Id. "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." Id. at 145-46.

With regard to White's blood alcohol, the test revealed White had an ethanol level of 176.0 milligrams per deciliter at 11:10 p.m. on the night of the assault. A section titled "Interpretive Data" in the comment section indicates that "[i]f ethanol is the only drug taken, the blood level can be roughly correlated with the clinical findings:…100-200 mg/dL Emotional instability[,] 150-200 mg/dL Confusion…"

The drug testing records of White's urine screen showed a "Value" of "confirmed positive" for "cocaine metabolite" but the "Ref. Range" was "None Detected." The result also indicated a "Flag" of "A" and a "Status" of "C" but the records provided no

information as to the meaning of the "Flag" or "Status." The records subsequently stated the "Value" for cocaine metabolite to be "Presumptive." Under "Interpretive Data" in the comments section, the records stated the "Immunoassay Screen cutoff level 150 ng/mL. Drug results are to be used only for medical purposes. All results, especially unconfirmed screening results, must not be used for non[-]medical purposes."

The trial court did not abuse its discretion in redacting White's medical records prior to submitting them to the jury. The meaning and implication of the alcohol and drug testing records were unclear without the assistance of expert testimony to explain the results. It is unknown what is meant by a positive result for cocaine metabolite without a detected range. There is no evidence as to when White may have consumed the drugs and, therefore, the test results do not impeach White's testimony that he did not consume drugs on the night of the assault or "around that time period."

There is no evidence that White's ethanol level of 176.0 milligrams per deciliter would impeach White's testimony that he consumed two to three beers and was not intoxicated on the night of the assault. Nor is there any evidence explaining the effect this amount of ethanol in White's blood would have had on White. Based on the foregoing, Appellant's Point II is denied.

### Point III – Second-Degree Assault Instruction

At trial, the jury was instructed on the charged offense of first-degree assault in Instruction 5 and on the lesser-included offense of second-degree assault in Instruction 6.

These instructions provided in relevant part as follows:

### Instruction 5

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

8

That on or about October 1, 2011, in the City of St. Louis, State of Missouri, the defendant attempted to kill or cause serious physical injury to Edward White by shooting at him and striking him with a gun, then you will find the defendant guilty under Count I of assault in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

…

## Instruction 6

As to Count I, if you do not find the defendant guilty of assault in the first degree as submitted in Instruction No. 5, you must consider whether he is guilty of assault in the second degree.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

That on or about October 1, 2011, in the City of St. Louis, State of Missouri, the defendant attempted to cause physical injury to Edward White by means of a deadly weapon by shooting at him and striking him with a gun, then you will find the defendant guilty under Count I of assault in the second degree

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

…

Defense counsel objected to Instruction 6 at trial, contending the jury may convict Appellant of second-degree assault based on a finding Appellant either shot at or struck White. The trial court rejected Appellant's objection, noting both instructions required finding Appellant both shot at and struck the victim.

On appeal, Appellant asserts the trial court abused its discretion in submitting Jury Instruction 6 for assault in the second degree, in that Appellant was not assured a unanimous verdict because the instruction did not specify the assault charged and did not ensure that the jury would unanimously convict Appellant of the same conduct.

9

The submission of or refusal to submit a tendered jury instruction is within the trial court's discretion. State v. Davis, 203 S.W.3d 796, 798 (Mo. App. W.D. 2006). On appeal, we review the trial court's decision for an abuse of that discretion. Id.

Again, Appellant's point on appeal is completely unsupported by the record. Appellant attempts to liken this case to State v. Celis-Garcia, 344 S.W.3d 150, 152 (Mo. banc. 2011), involving instructions as to seven separate incidents of statutory sodomy which failed to differentiate the various acts in a way that ensured the jury unanimously convicted the defendant of the same act or acts. The case *sub judice* is distinguishable, in that Appellant was charged with one count of assault that occurred in one place at one specific time.

Instruction 6 clearly required the jury to find Appellant attempted to injure White by "means of a deadly weapon by shooting at him *and* striking him with a gun" in order to find him guilty of second-degree assault. (Emphasis added). Jurors are presumed to follow the instructions provided. State v. Dominguez-Rodriguez, 471 S.W.3d 337, 344 (Mo. App. E.D. 2015). As such, this Court presumes the jury did not deviate from the clearly worded instruction and, instead, presumes the jury found Appellant both shot at and struck White with a gun in convicting him of second-degree assault. Contrary to Appellant's contentions otherwise, nothing in the record indicates the jury did not come to a unanimous decision with regard to the criminal conduct supporting the conviction. Notably, Instruction 6 effectively increased the State's burden by requiring the jury to find Appellant committed both acts in order to convict Appellant of second-degree assault. See State v. Edwards, 365 S.W.3d 240, 249 (Mo. App. W.D. 2012)(submission of verdict director requiring the jury to find two distinct acts of sodomy where one alone

10

would have been sufficient to sustain conviction increased the State's burden of proof).

The trial court did not err in submitting Instruction 6 on second-degree assault as written.

Appellant's Point III is denied.

<u>Conclusion</u>

The judgment of the trial court is affirmed.

_____
SHERRI B. SULLIVAN, J.

Lisa S. Van Amburg, C.J., and
Kurt S. Odenwald, J., concur.