

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED101663 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | |
| | ) | |
| RENO WHITT, JR., | ) | Honorable Colleen Dolan |
| | ) | |
| Defendant/Appellant. | ) | Filed: April 14, 2015 |

## Introduction

Reno Whitt, Jr. (Appellant) appeals from the judgment entered by the trial court upon the jury verdicts of guilty on the charges of resisting arrest and first-degree tampering, three counts. We affirm.

## Factual and Procedural Background

Appellant contests the sufficiency of the evidence to support his convictions for tampering. Viewed in the light most favorable to the verdicts, the following evidence was adduced at trial.

At approximately 2:00 a.m. on August 14, 2012, Officer Joshua Little received a call regarding males breaking into cars at the Normandy Court apartment complex. A similar call came in at that time from the Knoll Wood apartment complex, approximately three miles from the Normandy Court complex. Officer Robert Gerholdt received a call with a description of four black males in dark clothing in a red Pontiac Grand Prix at both the Normandy Court and Knoll

Wood apartment complexes. After arriving at the Knoll Wood apartment complex, Officer Little and Sergeant Gerald Fitzgerald laid out spike strips between their cars to stop any vehicle attempting to pass between them.

Officer Little was standing outside his car with the driver's side door open, lights activated. He saw a red Grand Prix, driven by Appellant with three passengers, moving slowly toward him and Sergeant Fitzgerald with its headlights off, so he got back in his car and moved it back. Appellant made an abrupt left turn, hitting Officer Little's car door and slamming it shut, then drove up onto the sidewalk. Officer Little and Sergeant Fitzgerald pursued the red Grand Prix, putting out a "be on the lookout" call for it. Officer James Sieve heard the call and pursued the vehicle after it passed him. Appellant was driving the Grand Prix at approximately 90 mph on McDonnell Boulevard when he swerved, lost control of the car, and crashed into a pole. Officer Sieve called for an ambulance. Appellant and his three passengers were trapped in the crashed car. Appellant's front passenger, Ricky Nelson, Jr., died the next day from injuries sustained in the accident.

Inside the car, police found two screwdrivers, one or two cell phones, and a small DVD player. Appellant and his passengers were wearing white gloves at the time of the accident.

The State charged Appellant, as a prior and persistent offender, with second-degree murder, resisting arrest, second-degree assault on a law enforcement officer, and three counts of first-degree tampering. The three counts of tampering were for defacing (1) Rodney Campbell's (Campbell) Dodge Ram, (2) Alice Timlin's (Timlin) Chrysler Sebring, and (3) Marvin King's (King) Chevy Impala.

A jury trial on Appellant's charges was held April 21-23, 2014. At trial, several witnesses from the Normandy Court apartment complex and surrounding area testified to the

2

defacement and break-ins of their cars on the night of August 14, 2012, and the personal items stolen from them.

Campbell testified his Dodge Ram 1500 truck was damaged on August 14, 2012 at Normandy Court, with a hole about the size of a screwdriver punched below the door lock on the driver's side and a broken steering column and ignition cylinder, with damage totaling $1,270.

Timlin, who lived in a condominium near Normandy Court, testified that on August 14, 2012, her 2001 Chrysler Sebring had the ignition switch removed from the steering column and laid on her car seat. Her door lock had also been pried out. Damage to her car totaled about $1,500.

King testified his 2010 Chevrolet Impala was broken into on August 14, 2012, at Normandy Court with a screwdriver, resulting in damage to his door lock and his door: "My driver's side door had got -- they had, I guess, used a screw driver or whatever and popped the lock on it." King testified his TomTom GPS and his Bible were taken from the car.

Appellant was the only witness to testify on his own behalf. At trial, he admitted he knew the Grand Prix was stolen. He also admitted he wore the white gloves to wipe his fingerprints off the steering wheel. He admitted to tampering with cars on many occasions.

The jury found Appellant guilty of resisting arrest and the three counts of first-degree tampering, and acquitted Appellant of the assault charge. The jury was deadlocked on the murder charge, so the trial court declared a mistrial on that charge and entered judgment in accordance with the jury's verdicts on the remaining counts.

The trial court sentenced Appellant to seven years' imprisonment on the resisting arrest charge and fifteen years' imprisonment for each of the three tampering counts, sentences to run concurrently with each other but consecutively to an unrelated case wherein Appellant's

probation had been revoked, for a total of twenty years' imprisonment. This appeal follows. Appellant presents three points on appeal.

## Point I

In his first point, Appellant maintains the trial court erred in overruling his motion for judgment of acquittal on the three tampering charges because sufficient evidence was not presented from which a reasonable juror could have found Appellant broke into the three cars that were the subject of the charges, since no one claimed to have seen Appellant or the other men in the car driven by Appellant breaking into the cars, and there was no evidence presented that anything found in the car Appellant was driving had been taken from the cars that were the subjects of the tampering charges.

In reviewing a sufficiency of the evidence claim, we accept as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregard all evidence and inferences to the contrary. State v. Grim, 854 S.W.2d 403, 405 (Mo.banc 1993). Our review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. Id.

Section 569.080, Tampering in the first degree, provides in pertinent part:

> 1. A person commits the crime of tampering in the first degree if:
> …
> (2) He or she knowingly … defaces, destroys or unlawfully operates an automobile … without the consent of the owner thereof.
> …

Here, the State charged Appellant with three counts of first-degree tampering based on his or his accomplices' defacing the three vehicles belonging to Campbell, Timlin and King.

The jury heard evidence from the three vehicles' owners, Campbell, Timlin and King, who lived at or adjacent to the subject apartment complexes, attesting to the damage their

4

vehicles sustained the same night four black males were reported by at least three complex residents to be wearing dark clothes, driving a red Grand Prix, and breaking into cars.

Upon arrival at the Knoll Wood complex in response to the complaints of tampering with cars, Sergeant Fitzgerald and Officer Little saw Appellant and his three passengers, four black males in a red Grand Prix, as described by the callers, driving slowly through the complex with their headlights off. Upon seeing Fitzgerald and Little, Appellant fled in the Grand Prix, led the police on high-speed chase, and crashed the vehicle into a pole, killing his front seat passenger. Two screwdrivers were found by the police in the red Grand Prix. Appellant and his passengers had white gloves on, which Appellant admitted he put on after seeing the police in order to wipe his fingerprints from the car he was driving, which he knew was stolen. Appellant admitted he had done this kind of thing many times before. On cross-examination, the State asked Appellant why he was driving the stolen red Pontiac Grand Prix:

Q. Okay, all right, so Ricky and Keith pick you up in the stolen red Grand Prix and Haquis says he wants you to drive?

A. Yes.

Q. Even though it's not his stolen Grand Prix?

A. Yes.

Q. Okay, so, then Keith and Ricky just abide by whatever Haquis wants?

A. No.

Q. Well, it's their stolen car. Why did they let somebody else drive it? Do you know?

A. Because he don't trust him driving. He trusts me.

Q. Okay, so you're the better getaway driver?

A. Yes.

Q. You've done this before?

5

A. Yes.

Q. Lots of times?

A. Yes.

The foregoing constitutes sufficient evidence from which to conclude Appellant's guilt of tampering. Appellant's presence at the scene in the manner described, with the additional circumstances noted earlier and with his own actions, suggests inferences sufficient to a finding of guilt. State v. Wheeler, 802 S.W.2d 517,518-19 (Mo.App. E.D. 1989). While each fact, taken separately, may seem innocuous, a conviction may rest upon accumulated, interdependent facts. Id. at 519. Moreover, Appellant's behavior before, after or during the offense are circumstances from which his participation may be implied. Id. Taken together, the facts and the logical inferences of those facts were sufficient, if believed by the jury, to support the verdict. Id.

Appellant, his passengers, and the car they were in matched the description of the complaints of the individuals breaking into vehicles at the two apartment complexes. They were at one of the complexes on the night and at the time of the complaints, driving slowly with their headlights off. They fled from police. They had screwdrivers in their car. The vandalized cars had damage consistent with screwdriver tampering. They all had gloves on admittedly to wipe off their fingerprints.

A permissible inference of guilt may be drawn from acts or conduct of an accused subsequent to an offense if they tend to show a consciousness of guilt by reason of a desire to conceal the offense or role therein. State v. Fitzgerald, 778 S.W.2d 689, 691 (Mo.App. E.D. 1989). Appellant's flight from police was admissible to show a consciousness of guilt on his part. State v. Johns, 34 S.W.3d 93, 112 (Mo.banc 2000). Coupled with other evidence of guilt,

flight can be considered in support of a conviction. State v. Harrison, 698 S.W.2d 564, 566 (Mo.App. E.D. 1985).

This direct and circumstantial evidence, and reasonable inferences derived therefrom, was sufficient for a reasonable jury to find Appellant guilty beyond a reasonable doubt of the three charges of tampering. Point I is denied.

Point II

In his second point, Appellant claims the trial court abused its discretion in not granting his request for a mistrial on the resisting arrest count during jury deliberations because, at the time Appellant asked for the mistrial, the jury had already informed the court multiple times that they could not reach a verdict and the court's repeated instruction to continue with deliberations coerced the jury into a guilty verdict.

We review the denial of a motion for mistrial for abuse of discretion. State v. Johnson, 901 S.W.2d 60, 62 (Mo.banc 1995). A mistrial is a drastic remedy, which should only be employed in the most extraordinary of circumstances. State v. Clemons, 946 S.W.2d 206, 217 (Mo.banc 1997). The trial court is in the best position to determine whether a mistrial is appropriate. State v. Dewitt, 924 S.W.2d 568, 570 (Mo.App. E.D. 1996).

The jury began their deliberations of the six counts against Appellant at 12:45 p.m. At 2:55 p.m., 130 minutes later, they sent out a note that they could not agree on the resisting arrest charge. Both defense counsel and the State asked the court to send the jury a note telling them to continue deliberating, which they did. At 4:25 p.m., 90 minutes later, the jury again sent a note regarding the resisting arrest charge indicating they were "deadlocked, 11 to 1." The court asked if they had reached verdicts on any of the six counts. At 4:52 p.m., the jury responded they had reached verdicts on three of the six counts. The trial court announced, after

7

consultation with counsel, it would accept the three verdicts reached, dismiss the jury for the day and instruct them to return the following morning to resume deliberations on the three remaining counts. No one objected. The jury announced they found Appellant guilty of the three tampering counts, which the trial court accepted.

The jury returned the next day and resumed their deliberations on the three remaining counts at 9:07 a.m. At 9:24 a.m., the jury asked the court if the charge of murder could be reduced to a lesser charge and if they could find Appellant guilty of resisting arrest and not guilty of murder. The court responded to the jury they must be guided by the evidence as they recall it and the court's instructions. Although defense counsel did not object to the court giving this response to the jury, he requested a mistrial on the murder, resisting arrest, and assault counts, which the court denied.

At 11:16 a.m., the jury sent the court a note asking for a definition of "felony murder second degree" and informing the court that they may have reached a verdict on counts two and three, the resisting arrest and assault charges. Defense counsel again asked for a mistrial on the murder count, which was denied. The court informed the jury that it could not answer their questions about the definition of felony murder second degree and instructed them to continue deliberating.

At 11:45 a.m., the jury informed the court they had reached verdicts on the resisting arrest and assault charges and asked to render those without the felony murder count, on which they continued to be deadlocked. The court accepted the jury's verdicts of guilty of resisting arrest and not guilty of assault. The court declared a mistrial as to the murder count.

Appellant maintains the court coerced the jury into rendering a verdict on the resisting arrest count. Appellant claims the fact that the court told them to continue deliberating, even

8

after reaching verdicts on three of the six counts, clearly implied to the jury that they were going to be kept in deliberations until they reached a verdict on all of the counts. This assertion is belied by the fact that the court eventually accepted the jury's deadlock on the second-degree murder charge. The last time the court asked the jury to continue the deliberations, they indicated they "may have" reached a verdict on the resisting arrest charge, and it was the murder charge on which they remained deadlocked.

Additionally, the jury deliberated on six charges for a total of less than seven hours. This is not an exceptional or unreasonable amount of time to spend deliberating on numerous charges, especially charges serious in nature. Furthermore, the jury frequently announced their failure to reach verdicts after relatively short spans of deliberation. Finally, in spite of the court's frequent admonitions to resume deliberations, the jury ultimately failed to reach a unanimous verdict on the second-degree murder charge, which indicates they were not subject to coercion by the court to reach a verdict when they could not unanimously do so.

Based on the foregoing, we find the trial court did not coerce the jury into reaching their verdict on the resisting arrest charge and did not abuse its discretion in not granting a mistrial. Accordingly, Point II is denied.

Point III

In his third point, Appellant asserts the trial court erred and abused its discretion in not allowing Appellant to ask potential jurors about the defense of duress during *voir dire*, because the question was within the proper scope of *voir dire* as an attempt to determine whether the potential jurors had any preconceived biases regarding his theory of defense.

The trial judge is vested with the discretion to judge the appropriateness of specific questions, and is generally vested with wide discretion in the conduct of *voir dire*. State v.

9

Oates, 12 S.W.3d 307, 310 (Mo. banc 2000).  The trial judge is in the best position to determine whether questions raised in *voir dire* assure the presence of a fair and impartial jury without amounting to a prejudicial presentation of the evidence.  State v. Hunter, 179 S.W.3d 317, 321 (Mo.App. E.D. 2005).  Accordingly, we review a trial court's decision to disallow certain questions during *voir dire* for abuse of discretion.  Id.  The party asserting abuse has the burden of demonstrating a real probability that he was thereby prejudiced.  Id.

During *voir dire*, defense counsel presented the venire panel with hypothetical situations involving accomplice liability and felony murder to test their understanding and opinion of the concepts.  However, when defense counsel presented the panel with a hypothetical situation involving the defense of duress, the State objected, arguing the hypothetical was getting into the territory of the law, which was within the purview of the court when giving instructions to the jury.  The court sustained the objection.  Prior to their deliberations, the jury did receive an instruction regarding the defense of duress.

Appellant's defense to the resisting arrest charge was that he initially wanted to surrender to the police at Knoll Wood, but one of his friends in the back seat put a gun to his back and told him to drive.  As such, Appellant argued, he only fled from the police in the Grand Prix because he was under duress to do so.  Appellant maintains some individuals on the jury panel might have been predisposed to be biased against the concept of duress and so he was entitled to obtain the individual prospective jurors' reaction to his hypothetical.  His hypothetical posed a situation in which two individuals rob a store, the police arrive, one wants to surrender, but the other holds a gun to his back and orders him to flee in the getaway car.

The purpose of exposing prospective jurors to critical facts of the case during *voir dire* is to discover bias, not to create bias; questions may not be phrased in such a way as to attempt to

10

elicit a commitment from jurors on how they would react to hypothetical facts or seek to predispose jurors to react a certain way to anticipated evidence. State v. Ousley, 419 S.W.3d 65, 74 (Mo.banc 2013). Appellant's last hypothetical, which was identical to Appellant's testimony at trial, appears to be an attempt to elicit a commitment from jurors as to how they were going to react to the evidence and Appellant's defense theory at trial. The questions asked by defense counsel here were not designed to uncover bias, but rather were argumentative in that they were intended to inject Appellant's argument into the *voir dire* examination. State v. Womack, 967 S.W.2d 300, 302 (Mo.App. W.D. 1998). Phrasing a *voir dire* question in such a manner, which preconditions the panel members' minds to react, even subconsciously, in a particular way to anticipate evidence is an abuse of counsel's privilege to examine prospective jurors. Id. When the inquiry includes questions phrased or framed in such a manner that they require the one answering to speculate on his own reaction to such an extent that he tends to feel obligated to react in that manner, prejudice can be created. State v. Garrett, 627 S.W.2d 635, 642 (Mo.banc 1982). That is not acceptable *voir dire*, and the trial court did not abuse its discretion in curtailing it. Point III is denied.

### Conclusion

The trial court's judgment is affirmed.

_Sherri B. Sullivan_
Sherri B. Sullivan, P.J.

Mary K. Hoff, J., and
Philip M. Hess, J., concur.

11