**STATE of Missouri, Respondent,**

**v.**

**Tommy DAVIDSON, Appellant.**

**WD 79265**

Missouri Court of Appeals,
Western District.

Opinion filed: March 14, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 2017

Application for Transfer Denied June 27, 2017

Colette E. Neuner, for Respondent.

Rosalyn Koch, for Appellant.

Before Division Three: Alok Ahuja, Presiding Judge, Victor C. Howard, Judge and James E. Welsh, Judge

VICTOR C. HOWARD, JUDGE

Tommy Davidson appeals his conviction and sentence following a jury trial for tampering in the first degree, section 569.080.[1] In his first point on appeal, Davidson claims the trial court erred in denying his motion for judgment of acquittal because the evidence was insufficient to support the conviction. In his second point on appeal, Davidson claims the trial court plainly erred in allowing the prosecutor's closing argument with respect to the definition of the word possess.

We reverse Davidson's conviction for tampering in the first degree and vacate the associated sentence.

## Facts

On June 1, 2015, Cody Beall backed his truck out of his garage in Overland Park, Kansas, and got out of the truck to move his trash can. While Beall was still out of his truck, he saw a man jump into his truck. Beall tried to stop the man from taking his truck but was unsuccessful. A black sedan followed the truck as it sped away.

On June 22, 2015, law enforcement officer Sergeant Munson was dispatched to an emergency call in Lafayette County, Missouri, involving Beall's stolen truck. The driver of the truck attempted to flee from Sergeant Munson and ended up crashing into a ditch. The truck tires were spinning as though someone was trying to drive the truck out of the ditch. Sergeant Munson drew his service weapon and started giving commands toward the vehicle. The truck's windows were tinted too dark for Sergeant Munson to be able to see inside the vehicle.

Two men, one older and one younger, ran from behind the vehicle away from Sergeant Munson. The appellant in this case, Tommy Davidson, was the older man running from the stolen truck. The younger man was in the lead and jumped a fence and headed north while Davidson continued west. Sergeant Munson chased Davidson. Davidson refused to comply with Sergeant Munson's numerous commands for Davidson to get on the ground. Davidson stopped running and turned to face Sergeant Munson, and Sergeant Munson tased Davidson.

At the same time, Timothy Kelsey arrived home and backed into his garage. He heard sirens and squealing tires and saw the police car and stolen truck. He watched people get out of the stolen truck and heard Sergeant Munson yelling for the people to stop. The younger male ran though Kelsey's yard and disappeared. Then a woman ran past Kelsey, got into Kelsey's truck, and drove off in it. Kelsey tried to chase his stolen truck. As Sergeant Munson was kneeling on the ground handcuffing Davidson, Kelsey's stolen truck that was being driven by the woman hit Beall's stolen truck and almost hit Sergeant Munson and Davidson.

Deputy Gibson arrived to assist Sergeant Munson. Deputy Gibson transported Davidson to the hospital while Sergeant Munson remained to search for the younger man who had fled and to process Beall's stolen truck. The keys were still in the ignition. Both passenger side doors of the truck were open. A woman's purse was on the front floorboard. A man's wallet was on the back floorboard. Inside the driver's door panel was an inoperable 22 pistol revolver. Six license plates from both Missouri and Kansas were in the pouches

---

1. All statutory references herein are to RSMo 2000, supplemented by amendments through the current date, unless otherwise noted.

on the back of the front seats. One of those license plates was listed as stolen.

The wallet contained two sets of identification, one for Davidson and one for a Jeremy Davidson. While in the patrol car on the way to the hospital, Davidson overheard radio traffic for Jeremy Davidson's identification. Davidson identified Jeremy as his son.

Davidson was charged in Lafayette County with first degree tampering, felony resisting arrest, leaving the scene of the accident, failing to obey a sheriff, and receiving stolen property. The last three counts were dismissed before trial.

Davidson did not testify at trial. He did, however, call Tara Cochran as a witness. Cochran is the woman who stole Kelsey's truck. She had pleaded guilty to multiple charges, including attempted robbery, tampering with a motor vehicle, tampering with physical evidence, resisting arrest, and leaving the scene of an accident. Cochran was sentenced to fifteen years for those crimes. Cochran had prior convictions for possession of controlled substances, aggravated burglary, and misdemeanor theft.

Cochran testified as follows: She "was on meth really bad" the day Davidson was arrested by Sergeant Munson. Jeremy picked her up in the stolen truck that day to help her move her belongings from the place she had been living. After picking her up, Jeremy then picked up Davidson. Jeremy was driving, Cochran was in the passenger seat, and Davidson was in the back seat behind Cochran. Neither Cochran nor Jeremy told Davidson that the truck was stolen. They picked up Cochran's belongings, and began driving on the highway. When the group became aware of police lights and sirens behind them, Jeremy took off. Davidson was quiet during the police chase. After they crashed, Cochran jumped out and stole Kelsey's truck. At no time did Davidson drive the stolen truck.

On cross-examination, Cochran testified as follows. In her charge for tampering in the first degree, she was acting in concert with Jeremy and Davidson for possessing the stolen truck. Jeremy and Davidson saw each other more than once a day, and Davidson would notice what type of vehicle Jeremy drove. Jeremy did not have a job, and it was pretty clear that the stolen truck did not belong to Jeremy.

In his motion for judgment of acquittal at the close of the State's evidence, Davidson argued that he was only a passenger in the stolen truck. He noted that his wallet was found in the back seat of the truck. Davidson claimed he was thus guilty of tampering in the second degree as opposed to tampering in the first degree. The court denied the motion.

In its closing argument, the State said that when acting in concert, "[a] person is responsible for his own conduct and the conduct of others" and that "[t]hey were possessing that stolen truck together." The State argued:

Folks, that is what we have. The word possessed is used in there. They possessed the vehicle. And I have the feeling that [the defense attorney] is going to get up here and argue that riding in a vehicle is not possessing it. I am possessing my spot at this table. I don't own it. I'm not going to carry it out of here. My name is not on it. But I am possessing my spot at the table. I'm using it. I'm sitting here. I'm possessing it.

[The prosecutor's assistant] is possessing this spot on the table. We are both possessing it. If I ask [the assistant] to scoot down a seat, then I can possess that part of the table. She could switch seats. She could sit here. We are

both possessing it because we are using it; it's our exclusive use right here.

Just like when you are in a vehicle, it doesn't matter if you are driving or riding, when you are in that seat being transported from one place to another, your stuff is all over that truck, your wallet is found in the vehicle, you're possessing that vehicle. It doesn't matter if you are driving it.

And there is a definition in here that explains what possession is. Part of it is control, but there is more to it. A person has constructive possession if such person has the power and the intention at a given time to exercise dominion and control over the object, either directly or through another person or persons.

Folks, because of the way this vehicle crashed and the tinting on the windows, we don't know who was driving. Sergeant Munson can't tell you who was driving. He doesn't know who was sitting where. If you believe the defense witness, the Defendant was sitting in the back. But, it doesn't matter. The way it is charged, acting in concert, they acted together to possess that vehicle. That is exactly what happened. Because all three of them were acting together, it's acting in concert. It's constructive possession. He is guilty.

Davidson did not object to this closing argument.[2] He argued in his closing that there are two statutes: tampering in the first degree for possessing and tampering in the second degree for riding in a stolen vehicle. He claimed he never had control of the stolen truck because he was not driving it, that he panicked when the truck crashed while fleeing from police, and that he came to his senses and had turned

around to face Sergeant Munson when he was tased.

The jury was given the following instructions:

A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with the other person with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about June 22, 2015, in the County of Lafayette, State of Missouri, the Defendant or [Jeremy] or [Cochran] knowingly possessed a certain gray Lincoln automobile owned by Cody Beall, and

Second, that the Defendant or [Jeremy] or [Cochran] possessed the automobile without the consent of the owner, and

Third, that the Defendant or [Jeremy] or [Cochran] possessed it, knowing that the Defendant or [Jeremy] or [Cochran] did so without the consent of the owner,

then you are instructed that the offense of Tampering in the First Degree has occurred...

As used in this instruction, the term "possessed" means having actual or constructive possession of an object with knowledge of its presence. A person has actual possession if such person has the object on his or her person or within easy reach and convenient control. A

---

2. In his second Point, Davidson argues that the prosecutor's explanation of "constructive possession" in closing argument constituted plain error, and justifies a new trial on the tampering charge. Given our disposition of Davidson's first Point, we need not address his challenge to the prosecutor's closing argument.

person has constructive possession if such person has the power and the intention at a given time to exercise dominion or control over the object either directly or through another person or persons. Possession may be sole or joint. If one person alone has possession of an object, possession is sole. If two or more persons share possession of an object, possession is joint.

The jury found Davidson guilty of tampering in the first degree and resisting a felony arrest, section 575.150.[3] His motion for a new trial alleged insufficient evidence was presented that he possessed the stolen truck. The motion did not include a point concerning the State's closing argument. The trial court denied Davidson's motion for a new trial.

During sentencing, the court said:

> Well, sir, your co-defendant testified you were with your son at least once if not twice every day. And if that is, in fact, the case, then you would have known what was going on. You would have known [that the vehicle was being defaced and damaged] on the inside. You would have known it was stolen. And you were involved with possessing it.

The court sentenced Davidson to ten years imprisonment for tampering in the first degree and a consecutive five years imprisonment for resisting arrest. It said it would consider lowering the sentence if Davidson returned the laptop that had been inside the truck when it was stolen. Davidson said he knew nothing about the laptop.

Davidson now appeals to this court claiming two points of error.

## Point I: Sufficiency of Evidence

In his first point on appeal, Davidson claims the trial court erred in denying his motion for judgment of acquittal. He asserts the state failed to present sufficient evidence that he either possessed the truck or, with the purpose of promoting or furthering tampering, aided or encouraged another in possessing the truck. Davidson says the only evidence presented was that Davidson was close to Jeremy and that he ran from the truck after it crashed. In essence, Davidson argues that being inside the stolen vehicle was not sufficient evidence of possession as used in the statute for tampering in the first degree because being inside a stolen vehicle is contemplated by the statute for tampering in the second degree. Davidson says that if riding in a stolen vehicle constitutes tampering in the first degree then the statute for tampering in the second degree is superfluous.

### Standard of Review

"Generally, this Court's review of the sufficiency of the evidence is limited to whether the State has introduced sufficient evidence for any reasonable juror to have been convinced of the defendant's guilt beyond a reasonable doubt." *State v. Nash*, 339 S.W.3d 500, 508–09 (Mo. banc 2011) (citing *State v. Bateman*, 318 S.W.3d 681, 686–87 (Mo. banc 2010)). "This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder 'could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 509 (quoting *Bateman*, 318 S.W.3d at 687). "In reviewing the sufficiency of the evidence, all evi-

**3.** Davidson does not challenge his conviction for resisting arrest or the associated sentence on appeal.

dence favorable to the State is accepted as true, including all favorable inferences drawn from the evidence." *Id.* "All evidence and inferences to the contrary are disregarded." *Id.* " 'When reviewing the sufficiency of evidence supporting a criminal conviction, the Court does not act as a 'super juror' with veto powers, but gives great deference to the trier of fact.' " *Id.* (quoting *State v. Chaney,* 967 S.W.2d 47, 52 (Mo. banc 1998) (internal quotations omitted)). " '[T]his Court will not weigh the evidence anew since the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case.' " *Id.* (quoting *State v. Freeman,* 269 S.W.3d 422, 425 (Mo. banc 2008) (internal quotations omitted)).

### Relevant Legal Authority

Davidson was charged with and convicted of first degree tampering with a motor vehicle in concert with others. Section 569.080, RSMo Cum. Supp. 2013, states in relevant part:

**Tampering in the first degree.—**

1.  A person commits the crime of tampering in the first degree if:

(2)  He or she knowingly receives, possesses, sells, alters, defaces, destroys or unlawfully operates an automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle without the consent of the owner thereof.

2.  Tampering in the first degree is a class C felony.

Section 569.090, RSMo Cum. Supp. 2013, states in relevant part:

**Tampering in the second degree.—**

1.  A person commits the crime of tampering in the second degree if he or she:

(2)  Unlawfully rides in or upon another's automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle; or

3.  Tampering in the second degree is a class A misdemeanor unless:

(2)  The defendant has a prior conviction or has had a prior finding of guilt pursuant to paragraph (a) of subdivision (3) of subsection 3 of section 570.030, section 570.080, or subdivision (2) of subsection 1 of this section, in which case it is a class C felony.

Section 556.061(22), RSMo Cum. Supp. 2013, defines possession:

**"Possess"** or **"possessed"** means having actual or constructive possession of an object with knowledge of its presence. A person has actual possession if such person has the object on his or her person or within easy reach and convenient control. A person has constructive possession if such person has the power and the intention at a given time to exercise dominion or control over the object either directly or through another person or persons. Possession may also be sole or joint. If one person alone has possession of an object, possession is sole. If two or more persons share possession of an object, possession is joint;

The State claims Davidson acted in concert with Jeremy and Cochran. Section 562.041 states in relevant part:

**Responsibility for the conduct of another.—**

1.  A person is criminally responsible for the conduct of another when

(1)  The statute defining the offense makes him so responsible; or

(2)  Either before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

■ " 'Missouri law no longer recognizes any distinction between principals and accessories; it is now the law that all persons who act in concert are equally guilty.' " *State v. Thompson*, 489 S.W.3d 312, 323 (Mo. App. W.D. 2016) (quoting *State v. Ward*, 473 S.W.3d 686, 691 (Mo. App. W.D. 2015)). "The focus of Missouri courts on committing 'acts' that constitute a crime is upon whether the 'actor' has 'affirmatively participated' in the 'act' alleged to be a crime." *Id.* (citing *State v. Barker*, 442 S.W.3d 165, 169 (Mo. App. W.D. 2014)). " '[A]ll persons who act in concert to commit a crime are equally guilty.' " *Id.* (quoting *State v. Thomas,* 387 S.W.3d 432, 437 (Mo. App. W.D. 2013)).

■ "Intent usually is not susceptible of direct proof, but may be, and generally is, established by circumstantial evidence." *In Interest of V.L.P.*, 947 S.W.2d 546, 547 (Mo. App. W.D. 1997). " 'The defendant's mental state may be determined from evidence of the defendant's conduct before the act, from the act itself, and from the defendant's subsequent conduct.' " *State v. Holleran*, 197 S.W.3d 603, 611 (Mo. App. E.D. 2006) (quoting *State v. Hineman*, 14 S.W.3d 924, 927–28 (Mo. banc 1999)). " '[A] defendant's presence, opportunity, companionship, conduct, and flight are circumstances from which his purpose to commit a crime can be inferred.' " *Id.* (quoting *State v. Shelton*, 770 S.W.2d 716, 717 (Mo. App. E.D. 1989)). "Evidence that, after being stopped by a police officer and directed to remain, a defendant fled and hid is admissible evidence tending to prove a consciousness of guilt." *Id.* "The inference likewise applies when a police officer observes a defendant operating or tampering with a stolen vehicle, and defendant flees upon contact with the police officer." *Id.* "In addition, evidence of a desire to conceal one's identity from authorities shows

consciousness of guilt." *Holleran*, 197 S.W.3d at 611–12.

## *Driving the Stolen Truck*

■ All parties agree that Davidson knowingly driving (operating) a stolen vehicle would fall within the purview of tampering in the first degree. Davidson's complaint on appeal is that he was riding in a stolen vehicle, and his conduct was contemplated by tampering in the second degree instead.

The State places great emphasis on Sergeant Munson's testimony that he did not know who was driving, and it did not matter to him. Sergeant Munson arrested them all for "being in possession of a stolen vehicle." He stated he treats all occupants of a stolen vehicle the same "because they are inside of a stolen vehicle." The State also says that Cochran was the only person who testified that Davidson was not driving and the jury could have not believed her.

■ Absolutely no evidence was presented that Davidson was driving the truck. Sergeant Munson did not know who was driving, and Cochran said Jeremy was. No witness or evidence suggests that Davidson was driving. The jury is not "permitted to invent a version of facts—unsupported by any evidence—that fits the crimes charged." *State v. O'Brien*, 857 S.W.2d 212, 220 (Mo. banc 1993).

Perhaps in recognition of this, the State concedes in its brief that Jeremy was driving the stolen truck. Its brief states "Jeremy picked his father up" and "Jeremy crashed the Stolen Truck." We do not find sufficient evidence to uphold the conviction for tampering in the first degree under a theory that Davidson was operating a stolen vehicle.

## Possessing the Stolen Truck

The State presented its case on the theory that Davidson possessed the stolen truck, either through his own actions or through accomplice liability. The prosecutor argued at trial that Davidson's actions constituted possession because he was in the vehicle the same way the prosecutor was possessing the table by sitting at it.

Section 569.808(2) uses both the word "possesses" and "operates." Thus, the statute contemplates being guilty of tampering in the first degree even without actually operating the vehicle. Several cases affirm this.

In *State v. Crane*, 728 S.W.2d 656 (Mo. App. S.D. 1987), the defendant tried to start a vehicle that did not belong to him. *Id.* at 657. Upon discovery by the vehicle owner's son, Crane told the son to "get away from there or he would break [the son's] arm." *Id.* In his appeal from his tampering in the first degree tampering, Crane argued that he did not possess the vehicle because he never intended to keep it permanently, instead only planning to drive it and then return it. *Id.* The Southern District rejected this argument, stating "[t]he defendant sought to exclude . . . all others from possession of the vehicle." *Id.*

In *State v. Barnett*, 767 S.W.2d 38 (Mo. banc 1989), police found Barnett standing in front of a car that did not belong to him with the car hood open while another man was passed out in the passenger seat. *Id.* at 39. On appeal, Barnett claimed the evidence was insufficient to support his conviction for first degree tampering because he was standing by a disabled vehicle and not in substantial possession of it. *Id.* The court affirmed Barnett's conviction, finding he had possession because he was "exercising physical control or dominion" over the vehicle. *Id.* at 41.

The evidence was that Davidson was riding in the back seat. There is no evidence that he exercised physical control over or attempted to exclude others from the vehicle. We do not find sufficient evidence to uphold the conviction for tampering in the first degree under a theory that Davidson possessed the stolen vehicle through his actions alone.

## Possessing the Stolen Truck via Accomplice Liability

The State's case was primarily premised on the theory that Davidson was acting in concert with Jeremy and Cochran and was thus guilty of tampering in the first degree through accomplice liability. The State's argument is based on the idea that Davidson's actions made him a partner with Jeremy and Cochran in their criminal scheme as opposed to a mere passenger knowingly riding in a stolen vehicle. Prior cases have discussed situations where a defendant is guilty of tampering in the first degree as an accomplice.

In *State v. Whitt*, 461 S.W.3d 32 (Mo. App. E.D. 2015), the following evidence was adduced at trial. Three vehicles were damaged the same night four black males were reported by at least three apartment complex residents to be wearing dark clothes, driving a red Grand Prix, and breaking into cars. *Id.* at 36. Upon arriving at the apartment complex, law enforcement saw Whitt and his three passengers, four black males in a red Grand Prix, as described by the callers, driving slowly through the complex with the car's headlights off. *Id.* When Whitt saw the officers, he fled, leading police on a high speed chase. *Id.* Whitt and his passengers had white gloves on, which he admitted he put on after seeing the police in order to wipe his fingerprints from the car he was driving, which he knew was stolen. *Id.* Whitt

admitted he had done this kind of thing many times before and claimed he was driving because he was a better getaway driver than the other men in the car. *Id.*

Whitt claimed on appeal that insufficient evidence was presented that he broke into the specific vehicles that were the subject of first degree tampering charges because no one saw him or the men with him breaking into those vehicles and because no evidence was presented that the items found in the car Whitt was driving had been taken from the vehicles that were the subject of the tampering charges. *Id.* at 35-36. The Eastern District affirmed Whitt's convictions, finding that his "presence at the scene in the manner described, with the additional circumstances noted earlier and with his own actions, suggests inferences sufficient to a finding of guilt." *Id.* at 36-37.

In *State v. Jackson*, 228 S.W.3d 603 (Mo. App. W.D. 2007), the defendant and co-defendant were burglarizing a house when the homeowner arrived. *Id.* at 605. Upon discovery by the homeowner, Jackson and his co-defendant fled in a stolen vehicle. *Id.* Jackson was convicted of tampering in the first degree. *Id.* He complained on appeal about evidence of the uncharged burglary being introduced at trial. This court found:

> the evidence of the burglary tended to help prove that Jackson was guilty of "knowingly" tampering with the truck. The evidence was useful to show that Jackson and the other perpetrator were jointly engaged in a mission to commit burglary and, one would infer, appropriated the vehicle as a tool for the burglary. Such evidence served to show that, regardless of how the vehicle was removed from its owner in the first place, and whether it was taken by one of the men or both of them, there was reason to believe that the two men were co-venturers acting in concert in this un-

lawful purpose of planning and performing a burglary, and, thus, both were guilty of *knowingly* possessing, using, operating, and damaging the vehicle. *See* section 569.080.1. The proof of the burglary reduced the likelihood that a juror might wonder if there was any evidence that Jackson *knew* that the truck had been taken from the owner without permission. If the evidence showed only that Jackson drove the truck or rode in it, and there was no evidence of the burglary, there would not have been the same strong inference that he "knowingly" participated in using the truck without the permission of the owner. Thus, the logical relevance of the evidence outweighed any prejudicial effect.

*Id.* at 607.

Numerous other cases focus on the totality of circumstances that support a conclusion the defendant was engaged with others in a crime. *See State v. McLarty*, 414 S.W.2d 315 (Mo. 1967) (Defendant was guilty of tampering where he accompanied a known felon in the middle of the night to an unoccupied parking lot behind an apartment building and helped to try to get an air conditioner out of an automobile); *Thompson*, 489 S.W.3d 312 (Defendant was guilty of robbery and armed criminal action where he knew his accomplice was armed with a deadly weapon and he had dropped the accomplice off on five occasions where they had robbed other people and he fled from police); *Ward*, 473 S.W.3d 686 (Defendant was guilty of robbery, burglary, and armed criminal action where he took two accomplices to a third accomplice's neighborhood where they committed three crimes in the home across the street from the third accomplice); *State v. Wilson*, 359 S.W.3d 60 (Mo. App. W.D. 2011) (Defendant was guilty of drug trafficking where he was present at the scene, possessed a dealer's amount of cocaine, and was associating with persons involved in a drug manufacturing operation).

The State cites the following as evidence that Davidson intentionally acted together with Jeremy and Cochran in possessing the stolen truck: Davidson saw Jeremy more than once a day. Jeremy did not have a job. Cochran testified that is was pretty clear the stolen truck, which was a very nice vehicle, did not belong to Jeremy. When Jeremy picked Davidson up, Davidson should have known he was getting into a stolen vehicle. When Sergeant Munson turned on his lights and sirens and pursued the stolen truck, Davidson remained silent. When Jeremy crashed the stolen truck, Davidson took off running. The State notes Sergeant Munson's testimony that Davidson refused police commands to stop and at one point turned and faced him with his hands up like he was getting to ready to fight Sergeant Munson. The State says these actions are inconsistent with a person who is innocent.

In the light most favorable to the verdict, the evidence established that a vehicle was stolen on June 1. Twenty-two days later, Davidson was discovered by police riding in a vehicle he knew his son had stolen. Nothing suggests that Davidson acted with Jeremy and Cochran in taking or continuing to possess the vehicle.

The case currently before this court is more like *State v. Castaldi*, 386 S.W.2d 392 (Mo. 1965), where the defendant was found by police standing with two other men next to a burning vehicle. *Id.* at 393. One of the men was kneeling down, cutting the smoking body of the vehicle with an acetylene torch. *Id.* at 394. The second man told police that they were cutting up a junk vehicle. *Id.* Castaldi did not speak to police; he just stood there. *Id.* When the police officer went to investigate a second abandoned vehicle, Castaldi left with one of the men. *Id.* Castaldi was later arrested on the highway. *Id.* Castaldi was charged with and found guilty of tampering. *Id.* at 393.

The following evidence was presented at trial: Several days before police found the burned vehicle, one of the two men with Castaldi asked an auto parts store employee if he could borrow a cutting torch. *Id.* at 394. The employee did not loan the man a torch. *Id.* Around the same time, the other man found at the scene with Castaldi purchased a large oxygen tank and small acetylene tank. *Id.* The stolen vehicle came from a dealership. *Id.* The lot owner gave no one permission to remove or damage the vehicle. *Id.* Castaldi had a prior conviction for receiving stolen property. *Id.* He claimed he was going fishing with one of the men found at the scene when he came across the burning vehicle. *Id.* Castaldi denied touching the vehicle and claimed he left the scene because he needed a ride. *Id.*

On appeal, the State argued that, in the light most favorable to the verdict, there was sufficient evidence to sustain the verdict finding Castaldi guilty. *Id.* A man was cutting up a vehicle in Castaldi's presence. *Id.* Castaldi admitted to being in the area on a joint enterprise (fishing) with one of the men involved (the man who said they were just cutting up a junk vehicle). *Id.* Castaldi fled the scene without an explanation. *Id.*

The Missouri Supreme Court rejected the State's argument, stating:

Although he was in the company of those who were so implicated and was physically present and in close proximity while [one of the men present] was using the torch, and notwithstanding he left with [the man] when the officer of the law extended his search beyond the immediate scene of the fire, the most that can be said is that the state proved Castaldi's presence at the scene of the crime, an opportunity to commit the crime, suspicious circumstances, and perhaps flight.

Evidence that an accused had an opportunity to commit a crime, or which merely raises a suspicion and gives rise to conjecture, is insufficient as the basis for a judgment of conviction. Presence of the accused at the commission of a felony is evidence to be considered in determining whether he was guilty of aiding and abetting, but in order to aid and abet another in the commission of a crime something more than mere presence must be shown. The mere presence of Castaldi at the scene of the tampering by [the other men present] is insufficient to render Castaldi a participant. It is necessary that the accused 'associate himself with the venture' in some fashion, Mays v. United States, 8 Cir., 261 F.2d 662 [ (1958) ]; that some form of affirmative participation be shown, State v. Butler, Mo.Sup., 310 S.W.2d 952, 957 [ (1958) ],—participation in the crime as something that he wished to bring about; that he sought by his action to make it succeed, United States v. Peoni, 2 Cir., 100 F.2d 401, 402 [ (1938) ]; that he 'consciously shared' in the criminal act. Nye & Nissen v. United States, 336 U.S. 613, 620, 69 S.Ct. 766, 770, 93 L.Ed. 919 [ (1949) ]. In every case we have examined holding one guilty as an aider and abettor there has been some evidence of an act or deed or circumstance other than mere presence at the scene. There is nothing here from which it can be inferred that Castaldi encouraged or excited the commission of the offense, or participated therein, before or during the occasion when the deputy arrived, by words, gestures, looks, signs, or that he otherwise countenanced, approved or associated himself with this criminal activity, or even that he knew that a crime was being or had been committed. He was 'just standing there,' not as a participant, not as a lookout, but merely as a bystander.

Flight is a circumstance to be considered against an accused in connection with other evidence of the commission of a crime. State v. Thompson, Mo.Sup., 363 S.W.2d 711, 715 [ (1963) ]. Castaldi's 'flight,' however, if indeed his leaving under the circumstances may be considered a flight, is of itself insufficient to support a conviction, especially in view of the fact that he had a reasonable explanation consistent with a hypothesis other than that of consciousness of guilt. 23 C.J.S. Criminal Law § 907, p. 558. [The second man's] automobile was Castaldi's only readily available means of getting out of the woods and back to St. Louis, and when [the man] indicated his intention to leave in his car it would be reasonable for Castaldi to accompany him.

It was the burden of the state to prove Castaldi guilty beyond a reasonable doubt. The evidence offered to sustain this burden was sufficient to show that a crime was committed and sufficient to raise suspicions as to Castaldi's complicity, but insufficient to show that Castaldi tampered with this automobile or affirmatively participated in the crime. It did not show a set of circumstances inconsistent with his innocence nor did it exclude every reasonable hypothesis of his innocence. No fact issue was made. The judgment should be reversed and the defendant discharged.

Id. at 395-96.

All of the evidence presented, including Davidson's flight from police, supports the conclusion that he knew he was riding inside of a stolen vehicle. It does not support the conclusion that he was acting with Jeremy or Cochran to possess the stolen vehicle, though. We do not find sufficient evidence to uphold the conviction for tampering in the first degree under a theory that Davidson possessed the stolen vehicle as an accomplice.

## Conclusion

 Davidson's conviction for tampering in the first degree is not supported by sufficient evidence. It is reversed and the sentence vacated.[4] In all other respects, the judgment and sentence of the trial court is affirmed. Given our disposition of the first point, we need not address Davidson's second claim of error.

All concur.

4. "Where a conviction of a greater offense has been overturned for insufficiency of the evidence, the reviewing court *may* enter a conviction for a lesser offense if the evidence was sufficient for the jury to find each of the elements and the jury was required to find those elements to enter the ill-fated conviction on the greater offense." *State v. Blair*, 443 S.W.3d 677, 684 (Mo. App. W.D. 2014) (quoting *O'Brien*, 857 S.W.2d at 219–20). Neither

party in this case has asked this court to enter a conviction for tampering in the second degree in the event that we found the conviction for tampering in the first degree to be unsupported by sufficient evidence. Moreover, the jury was not required to find all the elements of tampering in the second degree when convicting Davidson of tampering in the first degree.