

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED100639 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the St. Louis County |
| | ) | Circuit Court |
| v. | ) | |
| | ) | Honorable Gloria Clark Reno |
| WILLIAM ADAMS, | ) | |
| | ) | |
| Defendant/Appellant. | ) | Filed:       September 23, 2014 |

### Introduction

William Adams (Defendant) appeals the trial court's judgment entered after a jury found him guilty of first-degree tampering with a motor vehicle, § 569.080, RSMo.[1]  He was sentenced as a prior and persistent offender to nine years' imprisonment.   Defendant claims the trial court abused its discretion by (1) sustaining the State's objection to cross-examination testimony; and (2) admitting evidence of uncharged misconduct.   We affirm.

### Factual Background

Viewed in the light most favorable to the jury's verdict, the evidence shows that on Sunday, May 13, 2012, Scott Theole, the vice-president of County Asphalt Paving Company

---

[1] Pursuant to § 569.080.1 (2) RSMo (Supp. 2012), a person commits the crime of first-degree tampering if "[h]e or she knowingly receives, possesses . . . or unlawfully operates an automobile . . . without consent of the owner thereof."

(County Asphalt) in St. Louis County, received a phone call from his sister notifying him that the front gate to the asphalt facility was open. Theole drove to the facility and noticed that a padlock used to secure the gate had been cut through. Inside the fence, Theole observed that one of the company's trucks was hooked up to a trailer and that a white Chevy pickup truck was gone from the lot. Theole called the police.

Later that afternoon, Officer Richard Sand, who was on patrol nearby, observed a white Chevy pickup truck driving towards the County Asphalt facility. Officer Sand was aware of the possible auto theft occurring at County Asphalt, and, knowing that businesses in the area were closed on Sundays, he followed the truck. Officer Sand continued to follow the Chevy truck until it stopped at County Asphalt. When Officer Sand pulled up to the facility, he saw Defendant standing by the front gate. After asking Defendant for identification, Officer Sand told him that he was investigating a report of a possible stolen vehicle. Defendant told the officer that he worked for County Asphalt and was returning the truck. Officer Sand ran a computer check and found that Defendant had outstanding warrants. He then informed Defendant that he was under arrest. At that point, Defendant fled the scene on foot. Officer Sand called for backup units and proceeded to run after Defendant.

A short time later, officers located Defendant behind a nearby car lot and arrested him. During a search, Officer Sand found two keys in Defendant's pocket. The Defendant volunteered to Officer Sand that the keys were for his van and house. Officers checked the keys and found that one key fit the ignition to the Chevy pickup. The other key fit the ignition of a Ford truck parked on the County Asphalt lot. Officers later discovered that the Ford truck had been reported stolen. Officers also found a set of bolt cutters inside the Chevy truck.

Defendant was taken into custody, and after being *Mirandized*,[2] Defendant made a statement to police. Defendant told police that he and a companion had been driving on Highway 44 when they ran out of gas. Defendant said that he walked over to County Asphalt, climbed the fence, found the Chevy truck with the key in it, and drove the truck off the lot through the front gate.

Defendant was subsequently charged with stealing a motor vehicle, and in the alternative, first-degree tampering with a motor vehicle. The matter was tried to a jury. At trial, Defendant testified that he did not know the Chevy truck was stolen and that he believed the owner was a man named "Red," whom he had met at a local service station. Defendant said that "Red" indicated that he wanted to sell the Chevy truck and gave Defendant the keys to the truck and permission to drive it. Defendant also said that he was merely returning the truck when Officer Sand stopped to question him in front of County Asphalt. At the close of the evidence, the jury was instructed on both stealing a motor vehicle, and in the alternative, first-degree tampering with a motor vehicle. The jury acquitted Defendant on the stealing charge, but found him guilty of first-degree tampering. The trial court sentenced him, as a prior and persistent offender, to nine years' imprisonment. Defendant raises two claims on appeal, both of which challenge the trial court's ruling as to the admissibility of evidence.

## Standard of Review

"The trial court has broad discretion with regard to the relevance and admissibility of evidence." *State v. Hatch*, 54 S.W.3d 623, 631 (Mo. App. W.D. 2001). "We review trial court decisions regarding the admissibility of evidence for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *Id.* Balancing the probative value of the evidence against its prejudicial effect lies within the sound discretion

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

of the trial court. *Id*. The trial court's discretionary ruling is presumed to be correct and the burden is on the defendant to overcome that presumption. *See State v. Tindle*, 395 S.W.3d 56, 61 (Mo. App. S.D. 2013).

### Point I: Cross-Examination Testimony

In his first point, Defendant argues that the trial court abused its discretion by sustaining the State's objection when defense counsel questioned Officer Sand regarding whether he seized $6.02 found in Defendant's pocket when he searched him. Defendant claims this evidence was within the scope of the State's rebuttal in order to contest the inference that Defendant "had left the truck because it ran out of gas." The State responds that Defendant's claim is without merit because the question of whether Defendant had any money in his pocket when he was arrested was beyond the scope of rebuttal evidence and Defendant failed to demonstrate that he was prejudiced.

As an initial matter, we note that in his first point relied on, Defendant states, in part, that the court's ruling "prevented [Defendant] from contesting the State's intimation that [he] had left the truck because it was out of gas." The facts of this case refer to two different "trucks," namely the Chevy pickup admittedly driven by Defendant, and also a Ford truck found on County Asphalt's lot. Defendant's point relied on fails to specify to which "truck" he is referring. Further, in the first paragraph of his argument, Defendant states that, "[t]his evidence was within the scope of rebuttal, which related to property that had been seized from [Defendant's] pocket, and with which the state attempted to discredit [Defendant's] explanation for driving the truck." Again, because Defendant fails to specify to which "truck" he refers, we can only speculate.

4

A point relied on must meet three requirements: (1) it must state the trial court's ruling about which appellant complains; (2) why the ruling was erroneous; and (3) what was before the trial court that supports the ruling that appellant contends should have been made. *Storey v. State*, 175 S.W.3d 116, 126 (Mo. banc 2005); Rule 84.04(d). "It is not the function of the appellate court to search the record to discover the facts that substantiate a point on appeal." *Boyd v. Boyd*, 134 S.W.3d 820, 824 (Mo. App. W.D. 2004). "An insufficient point relied on, which cannot be understood without resorting to the record or the argument section of the brief, preserves nothing for appellate review." *State v. Williams*, 951 S.W.2d 332, 338 (Mo. App. S.D. 1997). Despite the lack of specificity in Defendant's first point relied on and argument, and as we prefer to rule on the merits, we have reviewed his entire brief, as well as the State's response and argument, and find that we are able to discern the basis of Defendant's argument. Therefore, we address the point *ex gratia*.

The scope of rebuttal testimony is within the sound discretion of the trial court and we will not reverse that decision absent a showing that the trial court abused its discretion. *See State v. Simmons*, 944 S.W.2d 165, 177 (Mo. banc 1997). "Rebuttal evidence may explain, counteract, repel, or disprove a defendant's evidence either directly or by implication." *State v. Petty*, 967 S.W.2d 127, 141 (Mo. App. E.D. 1998).

Here, the assertion that defense counsel sought to contest – that Defendant ran out of gas – was not addressed during the State's rebuttal. Rather, this evidence was adduced during the State's case-in-chief when Officer Sand testified about Defendant's statement to police after his arrest. It was only after Defendant testified that a person named "Red" had given him a "key ring" with "three keys" on it, that Officer Sand was called as a rebuttal witness. Defendant had also testified that he had two other keys in his possession when he was arrested that belonged to

his van and house, but denied having a key to another stolen vehicle, other than the Chevy pickup. To refute this testimony, the State called Officer Sand as a rebuttal witness. Officer Sand testified that he found only two keys on Defendant when he was arrested. One of the keys fit the ignition of the Chevy truck that Defendant had been driving, and the other key fit the ignition of a Ford truck that was found on County Asphalt's lot and that police later discovered had been reported stolen.

After the State's rebuttal, defense counsel asked Officer Sand, on cross-examination, whether he seized $6.02 from Defendant at the time of his arrest. When the State objected, defense counsel argued that such evidence was within the scope of rebuttal because Officer Sand had previously testified that Defendant had indicated that he ran out of gas on Highway 44. Defense counsel explained that he sought to raise an inference that Defendant had enough money to buy gas and therefore would have no reason to leave the vehicle he was driving at the lot. Defendant maintains that if the jury had known that Defendant had six dollars in his pocket, it would have "rejected the State's theory that [Defendant] had exchanged the trucks because he ran out of gas" and instead, would have believed that Defendant had permission to drive the Chevy pickup off of County Asphalt's lot. We disagree.

While a defendant has the right to cross-examine his accusers, that right is not without limitation. *State v. DeClue*, 128 S.W.3d 864, 872 (Mo. App. S.D. 2004). Here, Officer Sand's rebuttal testimony was offered for a limited purpose – to dispel Defendant's contention that he possessed only one car key (to the Chevy pickup) that did not belong to him when he was arrested. The testimony tended to show not only that Defendant was being untruthful regarding the number of keys found in his possession, but also regarding the identity of the keys found in his possession when he was arrested. On the other hand, the evidence that defense counsel

sought to introduce – that Defendant had money in his possession at the time of his arrest – did not explain or disprove any matters relating to the State's rebuttal testimony. Accordingly, the trial court did not abuse its discretion in sustaining the State's objection. Point I is denied.

### Point II: Evidence of Uncharged Misconduct

Defendant's second point on appeal is that the trial court abused its discretion by allowing the State to adduce testimony regarding a key found in Defendant's possession at the time of his arrest. Specifically, Defendant objects to Officer Sand's testimony that one of the keys found in Defendant's pocket belonged to another vehicle that had been reported stolen. Defendant claims this evidence was inadmissible as uncharged misconduct, in violation of his right to be tried only for the crime charged. He maintains that he was prejudiced because the jury was allowed to infer that he had a propensity to steal vehicles. In response, the State contends that Officer Sand's rebuttal testimony concerning the key found in Defendant's pocket was admissible and relevant to rebut Defendant's testimony (that the keys belonged to his van and house) and to show that Defendant lied to police about the identity and number of keys found in his possession when he was arrested.

Before trial, Defendant moved to exclude evidence of uncharged bad acts, including evidence that when he was arrested he possessed a key to another truck that had been reported stolen. The State's position was that it would only refer to that key and truck if Defendant "opened the door."

At trial, Defendant testified that "Red" had given him a key ring with three keys on it. Defendant also said that he had only one key to a truck (the Chevy) that did not belong to him, but denied having a key to another stolen truck. As noted in Point I, to refute this testimony, the State called Officer Sand as a rebuttal witness. Officer Sand testified that he found two keys in

7

Defendant's pocket at the time of his arrest and that one of the keys fit the ignition of the Chevy pickup truck and the other key fit the ignition of a Ford truck located on County Asphalt's lot, a truck that police later discovered had been reported stolen from Hazelwood. Defense counsel objected and was overruled by the trial court.

The determination of the scope of rebuttal testimony is within the trial court's discretion and, absent an abuse of such discretion, we will not reverse that decision. *Simmons*, 944 S.W.2d at 177. As a general rule, evidence of uncharged misconduct is inadmissible to show that defendant had a propensity to commit such crimes. *State v. Pettit*, 976 S.W.2d 585, 590 (Mo. App. W.D. 1998). Exceptions to the general rule include evidence that tends to establish motive, intent, the absence of mistake or accident, or a common plan or scheme. *Id*. Evidence of uncharged misconduct must be logically relevant, in that it tends to establish guilt for the charged crime, and legally relevant, in that its probative value outweighs its prejudicial effect. *State v. Perryman*, 851 S.W.2d 776, 778 (Mo. App. E.D. 1993) (citation omitted). "The balancing of the effect and value of evidence rests within the sound discretion of the trial court." *Pettit*, 976 S.W.2d at 590.

Defendant concedes that the evidence was logically relevant to the extent that it showed his connection to the Ford truck found on County Asphalt's lot. However, he maintains that the trial court should not have allowed testimony that the truck was stolen because it was not legally relevant and prejudiced his defense by diverting the jury's attention from the charged offense and allowing the jury to infer that he had a propensity to steal vehicles.

In determining the legal relevance of uncharged crimes evidence, prejudice is a function of whether the admission of the evidence would cause a jury to convict as to the charged crimes simply because a defendant had engaged in prior bad acts or crimes, regardless of the logically

8

relevant evidence in the case. *State v. Williams*, 976 S.W.2d 1, 4 (Mo. App. W.D. 1998). Here, the record shows that the trial court allowed the State to present only limited rebuttal testimony. As noted, this testimony was relevant to refute Defendant's claim that the keys found in his pocket belonged to his van and house. The testimony was also relevant to establish that Defendant had attempted to deceive the police by lying about the number and identity of the keys found in his possession.

In any event, the prejudicial effect, if any, was minimal, in light of the overwhelming evidence of Defendant's guilt presented at trial. A conviction will not be reversed due to admission of improper evidence unless the defendant has proven that prejudice resulted by showing there is a reasonable probability that in the absence of such evidence the verdict would have been different. *See State v. Danikas*, 11 S.W.3d 782, 792 (Mo. App. W.D. 1999). Defendant bears the burden of showing that the trial court abused its discretion and that he was prejudiced as a result. *See State v. Johnson*, 207 S.W.3d 24, 40 (Mo. banc 2006).

Here, there was undisputed evidence that Defendant was driving the Chevy truck without the owner's permission. Officer Sand observed Defendant driving the Chevy truck near the asphalt facility after it was reported missing. After being told he was under arrest, Defendant fled from the police. Defendant also attempted to deceive police by falsely claiming that he worked at County Asphalt and was merely returning the truck. The key to the Chevy pickup was found in Defendant's pocket and officers found a set of bolt cutters in the Chevy truck after his arrest. In addition, Defendant admitted to police that he climbed the fence at County Asphalt, found the key in the Chevy truck, and drove it off the premises. Notwithstanding this substantial evidence, the jury *acquitted* Defendant on the stealing charge. In light of the overwhelming evidence to support Defendant's first-degree tampering conviction, and in the absence of

showing prejudice, we conclude that the trial court did not abuse its discretion by allowing the evidence.  Point II is denied.

## Conclusion

For the foregoing reasons, we affirm the judgment.

_____
Philip M. Hess, Judge

Sherri B. Sullivan, P.J. and
Mary K. Hoff, J. concur.