Anthony Rex Gabbert, Judge
LaDavid Fleming appeals a trial court's order to pay $1250 in restitution, after a jury convicted him of burglary in the second degree, pursuant to Section 569.170.[1] The court sentenced him to seven years imprisonment, in addition to ordering restitution. Fleming raises two points on appeal. First, he alleges the trial court erred, because it lacked authority to order restitution under Section 559.105, in that there was no evidence any victim suffered a quantifiable loss due to Fleming's offense. Second, he argues the trial court erred, because its failure to re-address the restitution amount at the reconvened sentencing hearing denied Fleming due process of law.[2] Because we find no evidence of quantifiable loss due to Fleming's burglary, we vacate the restitution order.
Background
On the evening of Saturday, May 3, 2014, Fleming was discovered rummaging through a desk drawer in the sales office of Finnigan's, a banquet venue. Finnigan's was closed and the sales office lights were off. The manager who found Fleming in the unlit office escorted him back to the bowling alley where Fleming had just been. The bowling alley and Finnigan's are in the same building. Upon returning to the office, the manager found fresh pry marks on the office door and wood shavings on the floor nearby. He notified the police. A responding officer observed evidence of a possible break-in, located Fleming at the bowling alley, issued him a trespass notice, and then escorted him off the premises.
On Monday, May 5, 2014, the salesperson, in whose office Fleming had been discovered, noticed the newly damaged door and found that a $1250 check from Vocational Services, Inc. was missing. The check was received on Friday, May 2, 2014.
Anastacia Carter, Fleming's acquaintance, testified that Fleming gave her a fraudulent check on May 6, 2014. The check was written on the same checking account as the $1250 check Finnigan's had received from Vocational Services. Carter further testified Fleming drove her to a bank to cash the check. While Carter was *562 inside the bank, Fleming waited outside in Carter's car. The bank contacted Vocational Services' executive director to determine whether the organization had issued the check Carter had presented. Vocational Services informed the bank that the check in question had not been issued and that two checks that had cleared had also not been issued. The checks that cleared were written on the same account as the fraudulent check Carter was presenting to the bank. Instead of cashing that check, the bank called the police, who arrested Carter while Fleming drove off. Carter later identified Fleming in a lineup as the man who had given her the fraudulent check.
Fleming was charged as a persistent offender with one count of second-degree burglary committed on May 3, 2014. The persistent offender finding stemmed from Fleming's two prior forgery convictions. On March 3, 2015, a trial jury found Fleming guilty as charged, and the court sentenced Fleming to seven years' imprisonment and ordered him to pay $1250 in restitution.
Point I
Fleming first argues the trial court erred, because it lacked authority to order restitution under Section 559.105, in that there was no evidence of quantifiable loss due to Fleming's offense. We review the trial court's sentencing decision for abuse of discretion. State v. Fields , 480 S.W.3d 446, 450 (Mo. App. 2016). "A trial court abuses its discretion if the ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." Id. (citation and internal quotes omitted). Finding no evidence of quantifiable loss due to Fleming's burglary, we vacate the trial court's restitution order.
Chapter 559 invests the trial courts with broad authority to determine the conditions of a defendant's parole or probation. Section 559.021.1 states, "The conditions of probation shall be such as the court in its discretion deems reasonably necessary to ensure that the defendant will not again violate the law." Section 559.100.2 provides the court "shall determine any conditions of probation or parole for the defendant that it deems necessary to ensure the successful completion of the probation or parole term." Section 559.105.1 provides, "Any person who has been found guilty or has pled guilty to an offense may be ordered by the court to make restitution to the victim for the victim's losses due to such offense."
In State ex rel. Bowman v. Inman , 516 S.W.3d 367 (Mo. banc 2017), our Supreme Court describes how Section 559.105.1 limits the discretionary authority granted under Sections 559.021 and 559.100:
There is no doubt that section 559.105.1 limits the broad authority granted under sections 559.021 and 559.100. Not only must statutes on the same subject be read together, Lane v. Lensmeyer , 158 S.W.3d 218, 226 (Mo. banc 2005), but it would be absurd to conclude the General Assembly intended to impose a causation requirement for restitution under Section 559.105.1, while allowing for restitution unrestrained by "but for" causation under Sections 559.021 and 559.100. Instead, this Court concludes the General Assembly intended sections 559.021 and 559.100 to authorize trial courts to require restitution as a condition of probation but intended also that any exercise of that authority would comply with the causation requirement imposed by section 559.105.1, i.e., that restitution only be required for losses "due to" the offense for which the defendant has been found (or pleaded) guilty.
Bowman at 369. The court further recognized that the "plain and unambiguous *563 meaning of the phrase 'due to' is 'because of.' " Id. (citing Webster's Third New International Dictionary 699 (2002).
In Bowman , the victim conceded the defendant returned all the items he had pleaded guilty to stealing. Id. Though other stolen items were unrecovered, "there was no evidence connecting Bowman to [the victim's] unrecovered losses, nor was there any evidence that [the victim's] unrecovered losses were 'due to' or 'because of' the misdemeanor offense of receiving stolen property to which Bowman had pleaded guilty." Id. In the present case, one can infer the two fraudulent checks that were cashed were connected to Fleming's burglary. Not only were they written on the same checking account as the fraudulent check that was not cashed, they were also cashed and cleared soon after the $1250 check disappeared from Finnigan's.
However, we find no evidence justifying the $1250 restitution amount ordered by the court. The record clearly states the stolen $1250 check was never cashed, and the record does not indicate the amounts for which the cashed checks were written. What the record does indicate is confusion concerning how the Sentencing Assessment Report (SAR) arrived at the $1250 in restitution.
At the sentencing hearing on April 24, 2015, defense counsel asked the court why the restitution amount was set at $1250, when there was no loss on the $1250 check. The following exchange ensued:
THE COURT: Well, I'm not sure, then, why the Sentence Assessment Report would list restitution in that amount. [Prosecutor], do you show restitution in this case?
[PROSECUTOR]: As far as plea negotiations-here's what I do know, Judge, that the check was taken, and multiple other checks were created with this checking account number, so that may be where this loss is coming from. I'm not entirely sure, though Judge, because it wasn't this one check. This check was used to generate other checks. So I don't know where this restitution amount came from, Your Honor.
PROBATION OFFICER: This is what we have in our file that came from the prosecutor's office.
THE COURT: Well, I'm not ordering interest or the Prosecuting Attorney fee, which would increase it to $1,437.50 ... but I feel like I should order what was listed as the restitution in the case, and so it will be done.
Though the court granted a stay of execution, in part, because the court wanted to ensure the restitution amount ordered was "in fact correct," there was no mention of the restitution issue when the hearing reconvened.
While the trial court stated it had reviewed the SAR before sentencing Fleming, we find that the SAR does not establish how the $1250 restitution amount was determined. The SAR's Offense Summary makes no mention of a check amount other than the $1250 on the uncashed stolen check. In fact, the summary only specifically mentions one other forged check, not two, and it does not state the check was cashed or provide the check's amount. Creating further confusion, the SAR's Victim *564 Impact section states the suggested $1250 restitution amount was based on calculations "outlined in the plea agreement ," even though Fleming's case obviously went to trial.
Without evidence quantifying the losses "due to" Fleming's burglary, the restitution order fails the causation requirement imposed by Section 559.105.1. As the state should not "receive a second opportunity to prove its case" on remand, State v. Collins , 328 S.W.3d 705, 709 (Mo. banc 2011), we accordingly vacate the restitution order.
Point II
Fleming next argues the trial court erred, because its failure to re-address the restitution amount at the reconvened sentencing hearing denied Fleming due process of law. As our vacating of the restitution order under Point I is dispositive of Point II, we do not address Point II.
Conclusion
We conclude the trial court erred, because it lacked statutory authority to order restitution when there was no evidence of quantifiable loss due to Fleming's offense. The restitution order is vacated.
All concur.

All statutory citations are to RSMo 2000, as updated through the 2015 Cumulative Supplement, unless otherwise specified.

In the event we find no abuse of discretion, Fleming asks the court to review the alleged errors for plain error. However, because abuse of discretion is a lower standard of prejudicial error than plain error, a finding of no abuse of discretion precludes a finding of plain error. Moore v. Missouri Highway and Transportation Comm'n , 527 S.W.3d 215, 223 (Mo. App. 2017) ("We have already determined there was no abuse of discretion creating prejudice ... As such, there was no plain error either").