

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

STATE OF MISSOURI, )    ED106574
)
    Respondent, )    Appeal from the Circuit Court
)    of Warren County
v. )    15BB-CR00578-01
)
MARVIN YOUNG, )    Honorable Wesley C. Dalton
)
    Appellant. )    FILED: June 18, 2019

### OPINION

Marvin Young ("Appellant") appeals from a sentence and judgment of conviction for first-degree tampering. He argues the trial court erred in overruling his motions in limine, admitting certain evidence, denying his motion to dismiss for a speedy trial violation, denying his motion for acquittal and imposing sentence because there was insufficient evidence to support the verdict, sustaining the State's objection during closing arguments, and ordering restitution. We affirm Appellant's sentence and judgment of conviction, but we vacate the restitution order.

Appellant has filed a motion to strike the State's Supplemental Legal File containing the Sentencing Assessment Report (SAR), and his motion was taken with the case. The State's Supplemental Legal File was timely filed and properly includes portions of the trial court record.

*See* Rule 81.12(b), (e).  Appellant's motion to strike the State's Supplemental Legal File is denied.

Background

In an Amended Information dated September 8, 2016, the State charged Appellant with one count of the class C felony of first-degree tampering in violation of Section 569.080.[1]  The Information dated April 22, 2016, and the Amended Information alleged that on or about April 5, 2015, Appellant, acting alone or with others, altered automobiles by removing the wheels and tires without the consent of the owner, Rick Gastorf of Warren County, Missouri.  The Amended Information further alleged Appellant was a prior and persistent offender.  Before trial, Appellant filed a motion in limine to exclude evidence of prior bad acts, specifically: (1) that Appellant had been charged with and admitted to other wheel thefts at car dealerships in jurisdictions other than Warren County, and (2) Appellant's statements regarding his use of heroin.  After a hearing, the trial court denied the motion in limine.  In July 2017, approximately fifteen months after Appellant was first charged by the original Information, Appellant filed a motion to dismiss for violation of his right to a speedy trial.  The trial court denied the motion after a hearing.  The week before trial, Appellant filed another motion in limine seeking to exclude evidence that Appellant was a passenger in a vehicle stopped by the Wentzville Police Department on March 26, 2015, arguing that because this stop occurred more than a week before the charged April 5 tampering, it was not relevant.  After a hearing, the trial court denied this motion in limine.

The following evidence was adduced at the November 13, 2017, trial, viewed in the light most favorable to the verdict.[2]  On March 23, 2015, wheels were stolen off of vehicles on a car dealership in Fenton, Missouri.  Surveillance system photographs showed that the suspects drove

---

[1] All statutory references are to RSMo. (2016), unless otherwise indicated.
[2] State v. Moyers, 266 S.W.3d 272, 275 (Mo. App. W.D. 2008).

a tan or light-colored SUV with a distinctive aftermarket black hood with black hood "scoops" on it. On March 26, 2015, an officer with the Wentzville Police Department stopped a goldish-tan late 90's Chevy Tahoe for reasons unrelated to the theft. The vehicle had a "distinctive" sticker in the lower left-hand corner of the rear window. The driver was identified as Milliard Carpenter ("Carpenter") and the passenger was identified as Appellant.

On April 5, 2015, tires and wheels were stolen from two vehicles on the Gastorf Chevrolet car dealership in Warren County, Missouri, and the vehicles were placed up on cinderblocks. A surveillance video showed two people rolling tires to their vehicle, which was identified as a golden-color late model Chevy Tahoe SUV with a black "scoop" hood, aftermarket chrome wheels, and marking on one of the windows. The two people were not identifiable from the video. Police submitted photographs of the suspects' Chevy Tahoe SUV to the Highway Patrol's Missouri Informational Analysis Center.

On April 14, 2015, wheels were stolen off vehicles at a car dealership in Collinsville, Illinois. Surveillance video showed a gold colored Chevy Tahoe SUV with aftermarket wheels and a distinctive sticker on the back window enter the car dealership lot around 2:30 a.m., and two people exited the vehicle and proceeded to remove wheels from the dealership's vehicles. Police reviewed video surveillance from nearby businesses from around the same time, and video footage from a convenience store about three blocks from the car dealership showed the same gold SUV with aftermarket wheels and white rear-window sticker was there around 2:00 a.m. with two male occupants. The Collinsville Police Department circulated the men's pictures in a press release, and anonymous callers identified the two men as Carpenter and Appellant and provided an address. Police set up surveillance at the address and quickly observed Appellant leaving the residence, but when police attempted to apprehend Appellant, he fled, leading them

3

to a trailer. A subsequent search of the trailer revealed mail addressed to Appellant and multiple lug nuts, hub caps, latex gloves, and tools for removing wheels.

Appellant was subsequently arrested. During the police interview—the videotape of which was played to the jury—Appellant admitted to going to car dealerships with Carpenter and acting as the look out while Carpenter stole the wheels and that he would sometimes drive, assist with removing wheels, and help load the wheels. He stated Carpenter chose each of the victims and he could not remember each victim; however, he stated they stole wheels from all over. He initially stated he probably committed all of the wheel-theft incidents being investigated, but he later stated while he participated in the majority of the thefts, he did not participate in every single one. As for the April 2015 wheel theft at the Gastorf Chevrolet car dealership in Warren County at issue on appeal here, Appellant initially responded "yeah" when asked if he stole wheels in Warren County, but later he stated that Warren County did not sound familiar. The State's witness testified on direct examination and on redirect examination that Appellant did not specifically deny committing the wheel theft in Warren County, but the witness testified on cross-examination that Appellant denied committing a wheel theft in Warren County.

As for additional co-defendants, Appellant stated as far as he knew, he was the only one helping Carpenter. Detective Keith Jackson ("Detective Jackson") from the Collinsville, Illinois Police Department testified one time without objection that the police were only looking at Carpenter and Appellant as suspects because neither suspect gave any other names of co-defendants. Then when asked again if either Carpenter or Appellant provided the names of anyone else they had worked with on this type of crime, Detective Jackson answered "no." After Detective Jackson answered, counsel for Appellant objected on hearsay grounds, which the trial court overruled. Similarly, Detective Patrick Trentham ("Detective Trentham") from the St.

4

Louis County Police Department testified over a hearsay objection that neither Carpenter nor Appellant identified any other persons working with either of them to steal wheels, and police had not identified any additional suspects other than Carpenter and Appellant.

During his police interview, Appellant admitted he was a heroin addict and had been using heroin on a regular basis for the past several months. He stated he had been spending about $100 per day on heroin. He admitted he did not work but he had been funding his heroin use by helping Carpenter to steal wheels throughout the St. Louis metropolitan area and Illinois, which was his only source of income. We will address additional testimony and evidence during the Discussion as needed for our analysis.

Appellant presented no evidence in his defense, and at the close of all the evidence, he moved for a judgment of acquittal, which the trial court denied. The jury convicted Appellant of the single count of first-degree tampering. Appellant moved for a judgment of acquittal notwithstanding the verdict or for a new trial, which the trial court denied. The trial court sentenced Appellant as a prior and persistent offender to twelve years in the Missouri Department of Corrections, and it further ordered Appellant to pay restitution in the amount of $8,520.81. This appeal follows.

## Discussion

### Points I and VII

In his first and seventh points on appeal, Appellant argues the trial court abused its discretion in overruling the pretrial motions in limine regarding the admission of evidence of other wheel-theft crimes other than the charged crime and of his heroin use, in that this evidence was highly prejudicial evidence of his propensity to commit other crimes. We disagree.

5

A trial court has broad discretion to admit or exclude evidence at trial, and we review the trial court's ruling for an abuse of that discretion. *State v. Blurton*, 484 S.W.3d 758, 769 (Mo. banc 2016). An abuse of discretion occurs when the trial court's ruling clearly offends the logic of the circumstances or is so arbitrary and unreasonable that it shocks the sense of justice and indicates a lack of careful consideration. *Id.* Our review is for prejudice, not mere error, and we will reverse only if the defendant demonstrates that the error was so prejudicial as to deprive him of a fair trial and there was a reasonable probability the trial court's ruling affected the outcome of the trial. *Id.*; *see also State v. Anderson*, 76 S.W.3d 275, 277 (Mo. banc 2002). The burden lies on the defendant on appeal to overcome the presumption that the trial court's discretionary ruling was correct. *State v. Adams*, 443 S.W.3d 50, 53 (Mo. App. E.D. 2014).

In general, evidence of uncharged misconduct and prior convictions is inadmissible to show a defendant's propensity to commit such crimes, for fear that the jury would convict the defendant based on the propensity rather than on the evidence presented to support the particular crime charged. *Adams*, 443 S.W.3d at 55. There are, however, several established exceptions to this general rule, such as where the evidence tends to establish a motive or the identity of the person charged with the commission of the crime on trial. *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011). Evidence of uncharged misconduct must be both logically relevant, in that it must tend to establish guilt for the crime charged, and legally relevant, in that its probative value must outweigh its prejudicial effect. *Adams*, 443 S.W.3d at 55.

First, regarding Appellant's first point challenging the admission of evidence of other wheel-theft crimes, this evidence was relevant to establish Appellant's identity. The surveillance video from the Gastorf Chevrolet car dealership in Warren County following the April 2015 theft showed only the general appearance of the suspects and the vehicle they were driving, and thus

6

the suspects' identity was at issue. While the suspects were not identifiable from the surveillance footage, they were driving a distinctive golden-color Chevy Tahoe SUV with a black "scoop" hood and aftermarket chrome wheels.

To identify Appellant as one of the suspects, the State presented the following evidence connecting Appellant to the distinctive Chevy Tahoe SUV used in the crime. First, Appellant confessed to committing a wheel theft at a Fenton, Missouri car dealership, and surveillance footage from that car dealership showed two suspects driving a tan or light-colored SUV with a distinctive black hood with black scoops. Second, when police pulled over a goldish-tan late 90's Chevy Tahoe with a distinctive sticker in the lower left-hand corner of the rear window, the passenger identified himself as Appellant. Third, Appellant confessed to a wheel theft from a car dealership in Collinsville, Illinois, and surveillance video from that car dealership showed a gold GMC Yukon or Chevy Tahoe SUV with aftermarket wheels and a distinctive sticker on the back window enter the lot around 2:30 a.m., after which two people exited the vehicle and proceeded to remove wheels from the dealership's vehicles.

When considered together, the Fenton, Missouri wheel theft, the Wentzville traffic stop, and the Collinsville, Illinois wheel theft tended to establish Appellant's identity as the person in the Gastorf Chevrolet surveillance footage. *See State v. Naylor*, 510 S.W.3d 855, 862-63 (Mo. banc 2017) (evidence from uncharged burglaries was admissible to identify defendant based on similarities between crimes). The vehicle present during all crimes with its distinctive contrasting goldish-tan exterior and black "scoop" hood, its distinctive window sticker, and its aftermarket wheels was so unusual and distinctive as to resemble a signature of the defendant's involvement in both crimes. *See State v. Carter*, 523 S.W.3d 590, 600-01 (Mo. App. W.D. 2017) (evidence of uncharged crime admissible to identify defendant based on near-identical

7

similarities between charged crime and uncharged crime: namely, that both crimes involved luring victims to public parking lot to purchase cell phone and both crimes were committed by two men in red Kia).

Moreover, the evidence of the other crimes was not overused, as Appellant argues on appeal. Rather, the State elicited the evidence as necessary to connect Appellant to the Chevy Tahoe SUV and the Chevy Tahoe SUV to two additional crimes that were nearly identical to the charged offense.

Second, regarding Appellant's seventh point challenging the admission of evidence of his heroin use, this evidence was relevant to establish Appellant's motive to commit the charged crime. Wide latitude is given in the development of motive. *State v. Phillips*, 890 S.W.2d 698, 699 (Mo. App. E.D. 1995). Missouri courts have upheld the admission of drug use to establish a motive for the charged crime where the record explicitly included the admission of motive. *State v. Allen*, 274 S.W.3d 514, 522 (Mo. App. W.D. 2008). Similarly, here, the State elicited testimony that Appellant admitted to police he was a heroin user and that he spent $100 per day on buying heroin. He further confessed that he stole the wheels to fund his heroin use and had no other source of income. This evidence of his heroin use was admissible to establish his motive to commit the charged offense.

Because the challenged evidence was relevant to establish Appellant's identity as one of the suspects shown in the surveillance video from the Gastorf Chevrolet car dealership and to establish Appellant's motive to steal wheels, the probative value of this evidence far outweighed any prejudicial effect. *See Adams*, 443 S.W.3d at 55. The trial court did not abuse its discretion in overruling Appellant's motions in limine and in admitting this evidence.

Points I and VII are denied.

In his second point on appeal, Appellant argues the trial court abused its discretion in overruling his objections to the testimony of Detective Jackson and Detective Trentham that Carpenter never provided the names of anyone beside Appellant who helped him to steal wheels, in that such testimony was hearsay. We disagree.

Hearsay evidence is any out-of-court statement offered to prove the truth of the matter asserted, and such statements are generally inadmissible unless they fit within certain hearsay exceptions. *See State v. Edwards*, 537 S.W.3d 848, 853 (Mo. App. E.D. 2017). It has long been held that an objection to the admission of evidence must be made to preserve the issue for appeal. *State v. Johnson*, 284 S.W.3d 561, 582 (Mo. banc 2009). "It is well-established law in Missouri that hearsay may properly be considered as evidence by the trier of fact." *State v. Goodwin*, 43 S.W.3d 805, 818 (Mo. banc 2001).

Here, the State elicited the evidence Appellant challenges as hearsay three times. The first time Appellant did not object to the State's questions to Detective Jackson:

> Q: Throughout the course of your investigation were you looking for two suspects?
>
> A: Yes.
>
> …
>
> Q: And based on your review of the evidence were you looking for anyone else in connection to these cases?
>
> A: No.
>
> Q: Did either suspect ever give you any other names of any other people to look for?
>
> A: No.

The second time, the State asked, "[d]id either [Appellant] or [Carpenter] ever provide any names of anyone else they'd worked with on this type of job," and Appellant objected just after Detective Jackson answered, "[n]o." The third time, when the State asked Detective Trentham if "throughout the course of this investigation did either suspect ever give you any names of anyone else they had been working with to steal wheels and tires from the car dealerships," Appellant objected on the basis of hearsay. The objection was overruled and Detective Trentham answered, "[n]o."

Setting aside the issue of whether or not Carpenter's failure to identify any other co-defendant can be considered a "statement" for hearsay purposes, because Appellant did not object each time this same evidence was admitted, his objection is not preserved for appellate review. *See State v. Perdue*, 317 S.W.3d 645, 653 (Mo. App. S.D. 2010) (when defendant objected to portion of hearsay testimony but failed to object to other portions of hearsay testimony, hearsay objection was not preserved). Appellant here requested plain error review if this Court found his objection to be unpreserved; however, even under a plain-error analysis, "hearsay evidence offered without objection is not plain error." *Id.* at 653-54; *Masden v. State*, 62 S.W.3d 661, 670 n.4 (Mo. App. W.D. 2001). We decline to exercise our discretionary plain error review here. *See* Rule 29.12.

Point II is denied.

Point III

In his third point on appeal, Appellant argues the trial court erred in denying his motion to dismiss for a violation of his right to a speedy trial, in that his trial was unreasonably delayed by the actions of the court and the State, causing him prejudice. We disagree.

We review de novo the trial court's ruling on whether a defendant's Sixth Amendment right to a speedy trial was violated, while giving deference to the trial court's findings of fact. *State v. Sisco*, 458 S.W.3d 304, 313 (Mo. banc 2015). A criminal defendant's right to a speedy trial is guaranteed by the United States and the Missouri constitutions. *Id.* We balance four factors when determining whether a defendant's right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant resulting from the delay. *Barker v. Wingo*, 407 U.S. 514, 515 (1972); *State ex rel. Garcia v. Goldman*, 316 S.W.3d 907, 910-11 (Mo. banc 2010).

Initially, the length of the delay "triggers the analysis of whether a defendant's constitutional right to a speedy trial has been violated," in that the length of the delay must exceed a certain amount before it is considered "presumptively prejudicial," triggering the court's obligation to consider the other three factors. *State v. Wright*, 551 S.W.3d 608, 618 (Mo. App. E.D. 2018). Missouri courts have found that "a delay of greater than eight months is presumptively prejudicial." *Sisco*, 458 S.W.3d at 313 (internal quotation marks omitted). The State's delay in bringing a defendant to trial is measured from the time of a formal indictment or information, or upon arrest. *Wright*, 551 S.W.3d at 618-19. Here, the parties agree that the length of the delay exceeded eight months, which is presumptively prejudicial, triggering the remainder of the speedy-trial analysis.

Second, in determining whether the delay rose to the level of a Sixth Amendment violation, the burden is on the State to justify the reasons for any substantial delay. *Id.* at 619. While deliberate attempts to delay the trial weigh heavily against the State, neutral reasons, such as negligence and overcrowded dockets, weigh slightly against the State, and valid reasons, such as missing witnesses, are not held against the State. *Id.* Requests for continuances by the

defendant are weighed heavily against the defendant. *Id.* Here, there was no evidence of deliberate attempts by the State to delay the trial: one delay was due to an unavailable State's witness, one delay was due to insufficient staffing for the State, and the remainder of delays was due to the trial court "not reach[ing]" the case or "remov[ing]" the case from its docket. Thus, while this record shows the State to be responsible for the pretrial delay, the record does not demonstrate that the State deliberately attempted to postpone the trial in order to prejudice the defense. Thus, this second factor weighs only slightly against the State. Third, Appellant promptly asserted his right to a speedy trial, which weighs in his favor. *See Sisco*, 458 S.W.3d at 317; *State v. Smith*, 491 S.W.3d 286, 307 (Mo. App. E.D. 2016).

The fourth and final factor, actual prejudice suffered by the defendant as a result of the delay, is the most important. *Wright*, 551 S.W.3d at 620. Whether the delay causes a defendant actual prejudice is evaluated in light of three concerns: (1) prevention of oppressive pretrial incarceration, (2) minimization of anxiety or concern to the accused, and (3) limitation of the possibility of impairment to the defense. *Sisco*, 458 S.W.3d at 317. The burden to prove actual prejudice rests on the defendant. *Wright*, 551 S.W.3d at 620. Prejudice must be apparent, or at least reasonably inferable, from the record, and claims of speculative or possible prejudice are not sufficient to meet this burden. *Id.*

Here, because Appellant was incarcerated on other charges in addition to the present charges, he cannot show oppressiveness of pretrial incarceration. *See State v. Williams*, 120 S.W.3d 294, 300 (Mo. App. W.D. 2003). He would have been incarcerated regardless of any delays in this matter. Although Appellant asserts on appeal he felt "intense anxiety" regarding whether he would get credit for jail time served pending trial, this "intense anxiety" is neither apparent nor reasonably inferable from the record itself. Moreover, the judgment ordered

12

Appellant to receive credit for time served between his arrest and conviction. Finally, Appellant makes no allegation that the delay impaired his defense. Thus, without a showing of actual prejudice, this fourth factor weighs heavily in the State's favor.

Upon considering all four factors, we find that the time between the charges filed against Appellant and his trial did not violate his right to a speedy trial. Although he served an extended period of time before his trial due to delays by the State, because he suffered no actual prejudice from this delay, we conclude there was no Sixth Amendment violation. The trial court did not err in denying his motion to dismiss for a speedy-trial violation.

Point III is denied.

### Point IV

In his fourth point on appeal, Appellant argues the trial court erred in denying his motion for acquittal at the close of all evidence, denying the motion for new trial, and in imposing sentence because the evidence was not sufficient to prove beyond a reasonable doubt that he committed the charged offense. We disagree.

In general, we review challenges to the sufficiency of the evidence supporting a criminal conviction for whether the State introduced sufficient evidence at trial from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt of all the essential elements of the crime. *State v. Nash*, 339 S.W.3d 500, 508-09 (Mo. banc 2011). We accept as true all evidence supporting the jury's verdict, including all favorable inferences therefrom, and disregard all contrary evidence and negative inferences. *Id.* In our review, we do not act as a "super juror" with veto powers and will not reweigh the evidence on appeal; rather, we give great deference to the trier of fact, who may believe all, some, or none of the testimony of a witness. *State v. Davidson*, 521 S.W.3d 637, 643 (Mo. App. W.D. 2017).

13

A person commits the class C felony of first-degree tampering if he or she "knowingly … alters … an automobile … without the consent of the owner thereof."   Section 569.080.1(2). Here, the jury heard evidence that on April 5, 2015, wheels were stolen from two vehicles on the Gastorf Chevrolet car dealership in Warren County by two men driving a golden-color late model Chevy Tahoe SUV with a black "scoop" hood, aftermarket chrome wheels, and markings on the rear window.  They heard that at least two other car dealerships in nearby jurisdictions also had wheels stolen in March and April 2015 by two men driving a gold or tan Chevy Tahoe with a distinctive black hood with black "scoops," aftermarket wheels, and a distinctive white sticker on the rear window.  The jury heard that a search of Appellant's home revealed multiple lug nuts, hub caps, latex gloves, and tools for removing wheels.  They heard that when Appellant was arrested, he confessed to partnering with Carpenter to steal wheels from car dealerships "all over" the St. Louis metropolitan area, in order to fund his $100 per day addiction to heroin.  The jury heard that Appellant alternatively stated he probably committed all of, or he committed the majority but not all of, the wheel-theft incidents being investigated; he also stated that as far as he knew, he was the only person helping Carpenter.  The jury heard that Carpenter did not identify anyone else who stole wheels with him.  The jury heard Appellant state he did not remember each victim, and while he initially responded "yeah" when asked if he stole the wheels from the Gastorf Chevrolet car dealership in Warren County, he later said Warren County did not sound familiar.  This evidence was properly admissible, as discussed elsewhere in this opinion.

Considered in its totality, the State presented sufficient admissible evidence here from which a jury could reasonably infer that Appellant committed each element of the charged crime. The State argued Appellant did not definitely deny committing the wheel theft in Warren County, while Appellant argues he did and this denial was his theory of defense.  The jury is

14

tasked with resolving conflicts in evidence, and it is free to believe or disbelieve the testimony of any witness. *See Davidson*, 521 S.W.3d at 643; *see also State v. Newberry*, 605 S.W.2d 117, 121 (Mo. 1980). The jury, thus, was free to credit the testimony that Appellant initially stated he probably committed all of the crimes and he participated in the charged wheel theft in Warren County, and it was free to disregard his later denial of committing the wheel theft in Warren County. By its verdict, the jury credited Appellant's initial admission over his later denial. On review, we neither reweigh the evidence nor substitute our judgment for that of the jury's. *See Davidson*, 521 S.W.3d at 643.

The trial court did not err in denying Appellant's motion for acquittal at the close of all evidence, in denying the motion for new trial, and in imposing sentence, because the evidence here was sufficient to support each element of Appellant's conviction.

Point IV is denied.

Point V

In his fifth point on appeal, Appellant argues the trial court erred in sustaining the State's objection to his statement during closing arguments, which violated his right to present his defense because it prevented him from arguing that he would be held accountable for the crimes he committed in other jurisdictions and the jury should not base its conviction on those crimes. We disagree.

A trial court has broad discretion in controlling the scope of closing argument. *State v. Tate*, 561 S.W3d 483, 490-91 (Mo. App. E.D. 2018). We review the trial court's rulings during closing arguments for an abuse of that broad discretion, finding an abuse only where the ruling is clearly against the logic of the circumstances or is so arbitrary and unreasonable so as to shock the sense of justice and indicate a lack of careful reasoning. *Id.*

While the trial court should take care not to unduly restrict closing arguments, it should confine arguments to issues raised by the evidence. *State v. Forrest*, 183 S.W.3d 218, 226 (Mo. banc 2006). Counsel may argue inferences justified by the evidence but may not argue facts outside the record or inferences not supported by the facts. *Id.*

Here, during closing arguments, counsel for Appellant argued:

> [APPELLANT]: It just doesn't make sense. It doesn't make sense. Why admit to a bunch of others and not this one? They gave you excuses. None of them really track. That doesn't make sense.
>
> And once again, follow your head. It's not like Marvin's getting' off the hook here. He admitted to committing crimes in a bunch of different places. He isn't just walking free.
>
> [STATE]: Objection, your Honor. That's beyond the scope of what the jury has to determine.
>
> THE COURT: Sustained.

Appellant claims that by sustaining the State's objection to the statement "[h]e isn't just walking free," the trial court prevented him from presenting his theory of the case in closing argument. This argument fails. Facts about potential convictions or potential sentences for crimes charged in different jurisdictions were not in evidence, and thus his argument asserting he would serve prison time on the other uncharged crimes was properly excluded. *See Forrest*, 183 S.W.3d at 226.

Moreover, Appellant was not prevented from presenting his theory of defense in closing argument. During closing arguments he was able to argue without objection that it did not make sense for him to confess to committing some thefts then to deny the Warren County theft unless he was in fact innocent of the Warren County theft. He was able to argue without objection that although the State proved he committed thefts in St. Louis County and Illinois through his confession, the State did not prove he committed the theft in Warren County. He was able to

16

argue without objection that the jury should not convict Appellant for the Warren County offense with no evidence and no confession, just because he confessed to other offenses.

The trial court did not abuse its discretion in sustaining the State's objection to Appellant's statement during closing argument that referred to facts not in evidence.

Point V is denied.

Point VI

In his sixth point on appeal, Appellant argues the trial court erred in ordering and entering in the judgment and sentence that Appellant must pay $8,520.81 in restitution because the oral pronouncement made no mention of ordering restitution and there was no evidence that Gastorf's loss was $8,520.81. We agree.

Chapter 559 grants the trial courts broad authority to determine the conditions of a defendant's parole or probation. Specifically, Section 559.105.1 provides that "[a]ny person who has been found guilty or has pled guilty to an offense may be ordered by the court to make restitution to the victim for the victim's losses due to such offense." We review the trial court's exercise of this discretionary authority for an abuse of that discretion. *State v. Fleming*, 541 S.W.3d 560, 562 (Mo. App. W.D. 2018).

The restitution order must be supported by evidence quantifying the victim's losses "due to" the defendant's offense. *See* Section 559.105.1; *Fleming*, 541 S.W.3d at 563-64. Frequently, the SAR can provide such supporting evidence. *See Fleming*, 541 S.W.3d at 563. However, the SAR must clearly quantify the victim's unrecovered losses due to the offense for it to serve as the basis for the restitution order. *See id*. at 564-65 (vacating restitution order where SAR did not establish how restitution amount was determined and amounts mentioned in SAR did not correlate to restitution order).

Here, the SAR Victim Impact statement declared that the property loss to one vehicle totaled $4,523.67 and the property loss to the second vehicle totaled $3,847.14; however, it also noted the company had a deductible of $1,000.00 per vehicle plus 25% of parts and labor. First, the stated losses of $4,523.67 and $3,847.14 equals $8,370.81, not $8,520.81, which was the restitution order. Second, the vehicles were insured, thus reducing the victim's unrecovered losses. Because the State's evidence here failed to quantify the losses due to Appellant's conviction of first-degree tampering, the restitution order does not comply with Section 559.105.1. The State does not "'receive a second opportunity to prove its case' on remand," and thus we vacate the restitution order. *See id.* (quoting *State v. Collins*, 328 S.W.3d 705, 709 (Mo. banc 2011)).

Point VI is granted.

## Conclusion

The sentence and judgment of conviction of the trial court is affirmed, but the restitution order of $8,520.81 is vacated.

Robin Ransom, J.

Sherri B. Sullivan, P.J., and James M. Dowd, J., concur.

18